Filed 12/10/13  In re Rebeca D. CA2/6
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re REBECA D., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B248936 (Super. Ct. No. J069091) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BERTHA. A.,<br><br>    Defendant and Appellant. | |

The juvenile court terminated the guardianship of Bertha A. (Bertha), the unrelated guardian of three-year-old Rebeca D. (Rebeca) and sustained a Welfare and Institutions Code section 300, subdivisions (b) and (g)[1] petition alleging that she failed to protect Rebeca.[2]  Bertha appeals the order denying her section 388 petition for reunification services and/or an order placing Rebeca in her care.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] The court also sustained allegations that Rebeca's mother, R.D.D. (mother) failed to support and protect her. The court subsequently terminated mother's parental rights. Mother is not a party to this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, mother gave birth to Rebeca. Bertha was dating mother's uncle, Greg T. She and Greg became Rebeca's legal guardians. Greg died in 2011 and Rebeca remained in Bertha's care.

On September 5, 2012, Ventura County Human Services Agency (HSA) received a report that Roy A. (Roy), Bertha's adult son, was living in her home, along with three-year-old Rebeca. Roy had been in custody for approximately 18 months after he was charged with committing sexual offenses against a young child. The charges included sodomy with a child under the age of 10 years; aggravated sexual assault of a child (sodomy); and continuous sexual abuse of a child. (Pen. Code, §§ 288.7, subd. (a), 269, subd. (a)(3), 288.5, subd (a).) The alleged victim's mother was Roy's common law wife/girlfriend. The alleged victim claimed the offenses occurred when she was between the ages of five and eight, while she lived with her mother, Roy, and their other children. Roy moved into Bertha's home in late August or early September 2012, following the dismissal of the charges. HSA concluded the charges were substantiated.

On September 5, 2012, a social worker visited Bertha's home. She told Bertha it was not safe for Rebeca to live in her home while Roy lived there. Bertha denied that Roy lived in her home. She "emotionally exploded" and yelled, "[T]here is no way in hell you guys are going to remove my daughter from me, as my son did nothing." Roy joined the discussion and admitted he lived in Bertha's home. After further consideration, Bertha signed a safety plan which stated Roy could not reside in her home and he would leave her home that day. Roy agreed to do so.

During the next several weeks, HSA learned that Roy made daily visits to Bertha's home, sometimes late at night, and often ate, showered, and rested there. For example, it received a report that Roy was involved in a verbal and physical altercation with Bertha's teenage grandson, Gabriel. Gabriel was the son of Bertha's daughter, Selena O. On October 11, 2012, the HSA social worker interviewed Selena. The social worker subsequently interviewed Gabriel and Bertha. She learned Gabriel had returned to Bertha's home one night, with Angel (Roy's teenage daughter, and Bertha's

2

granddaughter). Gabriel and Angel were intoxicated, and Gabriel threw a bottle at Selena's head. Roy intervened, disciplined Gabriel, and insisted that he and Angel leave. Bertha acknowledged the incident occurred in her home around midnight. The social worker expressed concern that Bertha permitted Roy to be "a significant contributor to the parenting in the household." Bertha responded that Roy's daily presence in her home was "good." She said, "[M]y grandchildren don't respect me because they think I'm too old and now that he's here they respect me."

HSA further learned that Roy was a parolee, with multiple convictions. He had a robbery conviction, with a gang benefit allegation in 2000 (Pen. Code, §§ 211, 186.22, subd. (b)(1)); and felony weapon offense convictions in 2003 and 2008 (former § 12020, subd. (a)). In addition, Roy was emotionally unstable. He threatened to commit suicide more than once, and tried to kill himself in Bertha's home while Rebeca lived there. On May 13, 2011, after he was accused of committing sexual offenses against his girlfriend's young daughter, Roy hid in Bertha's home and barricaded himself in a bedroom closet. A team of officers evacuated her home, used pepper spray, and knocked down the closet door to reach Roy. He had cut his throat and both wrists and needed medical treatment.

On October 24, 2012, HSA took Rebeca into protective custody. On October 26, 2012, it filed a petition alleging Bertha failed to protect Rebeca. (§ 300, subd. (b)) by allowing Roy to be in her home while Rebeca lived there.

The juvenile court received and considered several reports from HSA, and approved Rebeca's detention and placement in foster care. During contested jurisdictional and dispositional proceedings on January 23, 2013, HSA presented documentary evidence, including multiple reports and memoranda. The November 26, 2012, jurisdiction and disposition report stated Bertha had already received "services from [HSA] during her non-relative guardianship [and] from the previous social worker during her contacts with the guardian and child." The report concluded Rebeca was "not safe in [Bertha's] home due to continued exposure to verbal and physical altercations [and] continued contact with [Roy, a] sexual perpetrator."

3

Bertha testified at the January 23, 2012, contested jurisdiction and disposition hearing. The juvenile court sustained the section 300 petition, terminated Bertha's legal guardianship of Rebeca, and ordered the bypass of reunification services for mother. The court set the section 366.26 permanency planning hearing for May 13, 2013. The court clerk provided Bertha with forms required to file a writ petition (JV820 and JV825) to challenge the court's January 23rd rulings and orders. Bertha did not file a writ petition.

On May 16, 2013, the date of the continued section 366.26 hearing, HSA filed its section 366.26 report. The report advised the court that Rebeca was "a happy and adjusting three and a half-year-old girl who appears to be thriving in her current placement," where she had lived since March 5, 2013. Rebeca appeared "to have a positive relationship with her foster parents who are also her prospective adoptive parents."

On May 16, 2013, Bertha filed a section 388 petition seeking reunification services and/or an order placing Rebeca in her care. Counsel for HSA observed that Bertha's handwritten statements in support of her petition showed she still did not acknowledge the risk Rebeca had faced in her home. Bertha wrote, "never did I ever risk[] her safety or her health." The juvenile court agreed: "I'm not convinced in any way that [Bertha] understands why . . . the guardianship was . . . discontinued [or that she had] an understanding of her need to protect the child." The court concluded Bertha failed to make a prima facie showing that her petition required a full hearing, and denied the petition. It also approved adoption as the permanent plan for Rebeca.

DISCUSSION

Bertha contends the juvenile court erred in summarily denying her section 388 petition seeking reunification services and/or an order placing Rebeca with her. The law is to the contrary. The court is given broad discretion to deny a hearing if the request for modification fails to state a change of circumstances or new evidence or fails to demonstrate that the requested modification is in the best interests of the child. (Cal.

4

Rules of Court, rule 5.570(d)(1) & ( 2); *In re Zachary G*. (1999) 77 Cal.App.4th 799, 808.)  Section 388 allows a person having an interest in a dependent child of the court to petition the court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstance or new evidence.  The petition must be verified and "set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction."  (*Id*. subd. (a)(1).)  The petitioner must "make a prima facie showing to trigger the right to proceed by way of a full hearing.  [Citation.]"  (*In re Marilyn H*. (1993) 5 Cal.4th 295, 310; *In re Anthony W*. (2001) 87 Cal.App.4th 246, 250.)  There are two parts to the prima facie showing:  The petitioner must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the child.  (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 529.)  "If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing."  (*In re Anthony W., supra*, at p. 250; *In re Zachary G., supra*, at p. 806.)  The petition must include "specific allegations describing the evidence constituting the proffered changed circumstances or new evidence."  (*In re Edward H*. (1996) 43 Cal.App.4th 584, 593.)

Bertha provided no substantial evidence of changed circumstances.  Her petition, and many of the supporting attachments, stressed the impact upon Bertha of losing her guardianship of Rebeca and their relationship of several years.  The attachments included (1) Bertha's handwritten letter about her relationship with Rebeca, who "brightened up [Bertha's] whole . . . life[;]" (2) a letter which verified Bertha had recently completed an 8-week positive parenting class, with a certificate from the parenting program; (3) a letter from Mercy Housing Resident Services Coordinator commending and describing Bertha's resiliency, support of her family, and help to others during 13 years he had known her as a resident of their properties; (4) a letter from a therapist stating that Bertha recently received therapy for anxiety and depression; and (5)

5

a letter from Bertha's daughter describing the relationship Bertha and her family have with Rebeca, and their mutual bonds.

In claiming the juvenile court erred by denying her section 388 petition without an evidentiary hearing, Bertha selectively emphasizes comments that counsel for Rebeca made at the outset of the hearing. He indicated he had not had adequate time to review the petition to assess whether it met the section 388 prima facie showing requirements. Bertha thus argues that a hearing was necessary. We disagree. For the most part, the comments of Rebeca's counsel reflect his reservations about Bertha's ability to protect Rebeca. For example, he had "a lot of concerns about [Bertha] and decisions she made and . . . actions that she took or didn't take that harmed [Rebeca]." During the May 16, 2013, hearing, Bertha presented no evidence to supplement her petition. Her counsel argued Bertha "was the de facto parent of [Rebeca] and should have been granted services at the very least, even if placement is not likely at this point." In contrast, Rebeca's counsel was "not sure that [Bertha] would have been granted de facto status because of her lack of protection of [Rebeca] from things going on in her household." He also did not favor delaying the hearing to address Bertha's section 388 petition more fully.

Moreover, Bertha made no showing that it would be in Rebeca's best interest to be removed from a loving foster/adopt home to live with a guardian who did not understand Rebeca needed protection from exposure to (1) ongoing verbal and physical altercations and (2) an emotionally unstable parolee with substantiated charges of committing sexual offenses against a young girl. Bertha also failed to establish that it would be in Rebeca's best interest to grant Bertha's request for reunification services. HSA had already provided her "services . . . during her non-relative guardianship [and] from the previous social worker during her contacts with the guardian and child." Bertha nonetheless failed to appreciate the risks Rebeca had faced in her care. The juvenile

6

court did not abuse its discretion in denying Bertha's section 388 petition.  (*In re Anthony W., supra*, 87 Cal.App.4th at p. 250; *In re Zachary G., supra*, 77 Cal.App.4th at p. 806.)

DISPOSITION

We affirm the order denying Bertha's section 388 petition.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

7

Ellen Gay Conroy, Judge

Superior Court County of Ventura

_____

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, Linda Stevenson, Assistant County Counsel, for Plaintiff and Respondent.