Filed 10/29/15  In re L.G. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re L.G., a Person Coming Under the Juvenile Court Law. | B263718 (Los Angeles County Super. Ct. No. CK70497) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MAYRA G.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Robert S. Draper, Judge.  Affirmed.

———

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

———

Mother Mayra G. appeals from the order denying her Welfare and Institutions Code section 388[1] petition and terminating her parental rights pursuant to section 366.26. Mother contends that the juvenile court should have granted her section 388 petition to provide her with reunification services with respect to her son L.G. We disagree and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Adjudication of the Amended Section 300 Petition and Disposition*

On June 25, 2013, pursuant to a juvenile court order, the Department of Children and Family Services (DCFS) detained the child, then four months old, and placed him with a foster care family. On September 23, the court sustained an amended section 300, subdivision (b), petition against mother, alleging: (1) Mother "has a history of illicit drug use and is a current user of cocaine, amphetamine and marijuana, which renders the mother incapable of providing regular care of the child. On prior occasions in 2013, the mother was under the influence of cocaine, amphetamine and marijuana, while the child was in the mother's care and supervision. On 06/18/2013, the mother had a positive toxicology screen of cocaine, amphetamines and marijuana. The mother has a criminal history of a conviction of Possession of [a] Controlled Substance. The child's [half-] siblings, [one born July 28, 2004 and the other born December 17, 2008], received Permanent Placement Services, due to the mother's illicit drug use. Such illicit drug use on the part of the mother endangers the child's physical health and safety and places the child at risk of physical harm and damage"; and (2) "[F]ather . . . and mother . . . placed the child . . . in an endangering situation. The endangering situation consisted of the mother punching the father on [the] face and head while the father had the child . . . in his arms. On a prior occasion, the father slapped the mother with an open hand and threatened her with [a] knife in the presence of the child. Subsequently the father was arrested. The parents failed to protect the child in that they remained in a relationship. Such a detrimental and endangering situation established by the parents endangers the

---

[1]     Statutory references are to the Welfare and Institutions Code.

child's physical and emotional health and safety and creates a detrimental home environment, placing the child at risk of physical and emotional harm and damage."[2] The court ordered the child to remain in his placement and continued the matter to March 24, 2014, for mother's disposition hearing.

DCFS submitted a report in advance of the March 24 hearing in which it stated that "mother had not made any contact with the foster parents for visits or to check on the child since the termination of her inpatient program at the Women's Residential Recovery Center on 11/29/2013. The mother had not made any contact with DCFS until January 2014 when she was provided with counseling, substance abuse, domestic violence, parenting and shelter referrals. The mother was also provided with a bus pass and was reminded about her Pacific Toxicology Testing. The mother was also referred to another inpatient program[;] however she was not accepted due to a language barrier. The mother has not made any contact with DCFS since mid January 2014." At the March 24 hearing, after reviewing the DCFS reports and listening to mother's testimony, the juvenile court denied mother reunification services under section 361.5, subdivision (b).[3] At a review hearing on April 22, the court terminated father's

---

[2] The juvenile court also sustained a section 300, subdivision (b), allegation against father stating that he "has a history of illicit drug use and is a current user of cocaine and marijuana, which renders the father incapable of providing regular care of the child. On prior occasions in 2013, the father was under the influence of cocaine and marijuana, while the child was in his . . . care and supervision. On 06/18/2013, the father had a positive toxicology screen of cocaine. Such illicit drug use on the part of the father endangers the child's physical health and safety and places the child at risk of physical harm and damage."

[3] The juvenile court denied mother reunification services under section 361.5, subdivisions (b)(10), (b)(11) and (b)(13). Those provisions allow for the denial of reunification services when the court finds by clear and convincing evidence, among other reasons, "[t]hat the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the

3

reunification services, which had been in effect for more than six months, and set the matter for a section 366.26 hearing on August 19.

2.      *Mother's Section 388 Petition and Termination of Parental Rights*

On August 19, mother filed a section 388 petition, asking the juvenile court to grant her reunification services or order the child placed with her. Mother presented evidence that she had been enrolled in a substance abuse and parenting program since April 18, "showing active participation[] and . . . engaging in the recovery process." She provided six urine samples, as of July 10, all of which were negative, and "appears to accept the consequences of her substance abuse usage; continued participation is still needed at this moment."

In the report prepared for the section 366.26 hearing, DCFS indicated that mother did not visit the child from November 2013 to May 2014. The foster parents had "a very strong attachment" to the child and "expressed a strong motivation to adopt him and make him a permanent part of their home." The child, who had lived with the foster parents for more than a year since the age of four months, was "attached to the [foster parents] . . . ." He "continue[d] to do well in the home with no reported issues or concerns." DCFS recommended termination of parental rights, freeing the child for adoption by the foster parents.

---

problems that led to removal of the sibling or half sibling of that child from that parent or guardian" (§ 361.5, subd. (b)(10)); "[t]hat the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent" (§ 361.5, subd. (b)(11)); and "[t]hat the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible" (§ 361.5, subd. (b)(13)).

4

DCFS responded to mother's section 388 petition, recommending that the court deny it. DCFS reported that mother's "[f]our months of services [since April 2014] is clearly not enough time to display progress or growth addressing case issues given mother's lengthy substance abuse history. [¶] The court is reminded that mother has a pattern of enrolling in outpatient/inpatient substance abuse programs and exiting the programs per her own will after a couple of months of participation. Mother has had sufficient time to successfully complete a substance abuse program, as the mother was in an inpatient substance abuse program at Mariposa Recovery Center, and mother chose to exit the program on 11/30/13. [¶] The mother has a history of extensive, abusive, and chronic use of drugs or alcohol, she has resisted prior court-ordered treatment for this problem during a three-year period, immediately prior to the filing of the petition that brought th[e] child to the court's attention, or has failed or refused to comply with a program of drug and/or alcohol treatment described in the case plan. [¶] In addition, mother has [an] unresolved history of domestic violence with . . . father . . . that she has not addressed. According to father, . . . he and the mother . . . are in a romantic relationship. Mother is currently pregnant with [father's] child. [Father] disclosed that [i]n 5/2014, he and mother engaged in a domestic violence altercation where law enforcement was called. It is evident that father and mother continue to engage in domestic violence disputes . . . ." Mother continued to participate in her program and as of August 14 had 12 negative urine tests.

The juvenile court continued the August 19 section 366.26 hearing. In a status report, filed on October 21, DCFS reported that the child "continue[d] to do well" in the care of the foster parents, and they desired to adopt him. He had a "positive emotional attachment" with them. Mother had her baby on November 1 and, after leaving the hospital, stayed at the Missionaries of Charity with the baby. As of November 17, mother completed her parenting class and the drug program and enrolled in a mental health and substance abuse program. Her drug program counselor recommended she continue on a voluntary basis in aftercare treatment. At a hearing on October 21, mother and father were observed in the court lobby in a verbal argument. Father told the social

5

worker that they argued and "he then grabbed mother by the sweater and requested that mother stop screaming at him as it is not appropriate given that they are at court." Mother denied that she and father were arguing and said she did not raise her voice at father. The foster parents were approved as adoptive parents for the child.

In a report filed on January 14, 2015, DCFS reported that mother was admitted into a residential substance abuse program on January 6 and then discharged two days later. The clinical director recommended that mother receive a mental health evaluation, as she "shows significant mental health challenges." Mother's judgment "is impaired, leading her to make unhealthy[,] impulsive decisions that will compromise her sons' welfare. [Mother] is full of denial of her bad choices in life and the circumstances that are affecting her today[;] she blames others for her situations." Mother was not honest with the clinical director and had two outbursts while at the residential center. The Missionaries of Charity permitted mother to live there with her new baby for one week. Mother stayed at the center for part but not all of the week and said she was going to live with her aunt, yet she did not have the aunt's address. Mother then reported that she was renting a room in a house. The social worker visited that woman, and the woman and mother had a dispute regarding father. Mother yelled at the woman, and the woman believed that mother was lying. Mother missed three of her last four drug tests; she continued to participate in her aftercare treatment and the most recent substance abuse program. She enrolled in a domestic violence support group on February 5 and participated in four of 26 classes.

On March 4, after numerous continuances, the juvenile court considered mother's section 388 petition, as well as one filed by father asking for reinstatement of his reunification services, and held a hearing under section 366.26. The court also considered a motion filed by the foster parents to become the child's de facto parents. The court granted the foster parents status as de facto parents. According to the court, "the important part is that [the child] has lived with these custodians for a very long period of time. It is clear to me from the reports [the child] has, in fact, formed a bond with the de facto parents, so the de facto parent motion is granted . . . ."

6

The juvenile court then commenced the hearing on mother's, as well as father's, section 388 petitions. As to mother, a certified addiction counselor testified that mother had completed a six-month primary care program at his facility and was continuing with after care. He said that mother had acquired housing and was "doing great" in her programs but not ready to stop. Mother enrolled in a domestic violence program in February. The court continued the section 388 hearing to April 17. On that day, mother testified that she was visiting the child once a week and wanted him returned to her custody. Mother's counsel argued for reunification services for mother or the child returned to her care, while DCFS and the child's counsel asserted that the court should deny the section 388 petition.

The juvenile court denied the petition. According to the court, mother has "changing circumstances. I don't believe mother has quite gotten to changed circumstances. But for long periods of time when the parents did not visit [the child], [the child] has been in placement with the de facto parents since September of 2013. He has bonded with them and, in terms of the best interests of [the child], there just comes a point in time when the court has to consider that best interest rather than the parents' interest, and so I find that it would not be in [the child's] best interest to grant the parents' 388, and there are no changed circumstances which justify granting those petitions, so those petitions are denied."

Proceeding to address section 366.26, mother's counsel stated that she objected to the termination of parental rights but, "based on the testimony and evidence before the [juvenile] court," did not believe she had an offer of proof to establish an exception to termination. DCFS, with the child's counsel in agreement, recommended termination of parental rights for mother and father with the matter proceeding to adoption. The court found clear and convincing evidence that the child is adoptable and that no exceptions to termination applied. The court terminated mother's and father's parental rights as to the child. The court continued its jurisdiction over mother's new baby and allowed him to remain placed with mother under DCFS supervision.

7

Mother appealed from the order.  (*Nahid H. v. Superior Court* (1997) 53 Cal.App.4th 1051, 1068 [order denying § 388 petition appealable]; *In re Benjamin E.* (1996) 44 Cal.App.4th 71, 76 [order terminating parental rights under § 366.26 appealable under § 395 as an order after judgment].)[4]

## DISCUSSION

Mother contends that the juvenile court abused its discretion by denying her section 388 petition because she demonstrated changed circumstances and granting the petition to afford her reunification services would be in the child's best interests. We disagree.

Section 388 authorizes modification of orders in juvenile dependency proceedings. Under subdivision (a) of the statute, a parent may petition the court on the basis of a change of circumstance or new evidence for a hearing to change, modify or set aside a previous court order.[5]  The provision is "an 'escape mechanism' when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights."  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528, quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

Section 388 requires the parent to show that a change of circumstance exists and that a different order is in the child's best interests.  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)  A parent who files a petition at the time of the section 366.26 hearing when he or she has no reunification services has a particularly weighty burden because at that point "a parent's interest in the care, custody and companionship of the child is no longer paramount" and "the focus shifts to the needs of the child for

---

**4**    The juvenile court denied father's section 388 petition and terminated his parental rights to the child.  Father did not appeal and thus is not a party to this matter.

**5**    Section 388, subdivision (a), provides, "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

permanency and stability." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.) In evaluating the child's best interests, courts consider: "(1) the seriousness of the problem [that] led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.*, *supra*, 56 Cal.App.4th at p. 532.) The juvenile court has "sound discretion" in deciding a section 388 petition, and "its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)

The juvenile court's denial of Mother's section 388 petition was not an abuse of discretion. Mother filed the petition on the date of her scheduled section 366.26 hearing. The hearing was not held until more than six months later. Although mother had made progress in her substance abuse treatment, she continued to have disputes with father and to deny or minimize the issues. Thus, mother did not establish changed circumstances as statutorily required for the granting of her section 388 petition. (*In re Casey D.*, *supra*, 70 Cal.App.4th at pp. 48-49 [mother's circumstances were changing but not changed when she had an extensive history of using drugs, entering programs and then relapsing and had been drug free for about five months as of the hearing on her § 388 petition].)

In any case, mother did not establish that granting her section 388 petition was in the child's best interests. Mother's progress with sobriety was commendable, but it came too late for the child. At the time of the hearing, the child was two years old and had not been in her care since the age of four months. He lived with his foster care parents during the entire dependency proceedings, and DCFS had approved them as adoptive parents. He was thriving in their home. Mother's drug problem was serious and long lasting, and she had domestic violence issues with father as well. Under these circumstances, and with a child under the age of two who had been detained for more than eighteen months, the juvenile court was within its discretion to conclude that moving toward permanency was in the child's best interests. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [no showing that granting § 388 petition to offer

9

reunification services to parents would be in children's best interests, despite parents' recent efforts at rehabilitation, when children, who were one and two years old at detention, were in a prospective adoptive home and should not be "depriv[ed] . . . of a permanent, stable home in exchange for an uncertain future"]; *In re Edward H.* (1996) 43 Cal.App.4th 584, 594 ["prospect of an additional six months of reunification to see if the mother would and could effectively separate from the father would not have promoted stability for the children and thus would not have promoted their best interests" when change of order requested on eve of § 366.26 hearing].)

Mother makes no separate argument regarding the termination of parental rights except to say that, if the order denying her section 388 petition is reversed, her parental rights should be reinstated. Given our conclusion that the juvenile court did not abuse its discretion in denying mother's section 388 petition, no basis exists to disturb the termination of parental rights.

**DISPOSITION**

The order denying Mother's section 388 petition and terminating parental rights is affirmed.

NOT TO BE PUBLISHED.


                                                    ROTHSCHILD, P. J.

We concur:



        CHANEY, J.



        JOHNSON, J.