[No. F023795. Fifth Dist. Feb. 29, 1996.]

In re EDWARD H., JR., et al., Persons Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v.
EDWARD H. SR., et al., Defendants and Appellants.

**COUNSEL**

Lori Klein, under appointment by the Court of Appeal, for Defendants and Appellants.

Phillip S. Cronin, County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**DIBIASO, J.**—Edward H., Sr., and Victoria H. appeal from the denial of their petitions to modify (Welf. & Inst. Code, § 388) prior juvenile dependency orders pertaining to their sons, Edward and Thomas, as well as the juvenile court's selection of adoption as the appropriate permanent plan for the boys (Welf. & Inst. Code, § 366.26).[1] The parents challenge these orders on the ground the juvenile court wrongfully denied them evidentiary hearings on their respective section 388 petitions. We affirm.

---

[1]All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

## STATEMENT OF CASE AND FACTS

In May 1993, the superior court adjudged Edward H., Jr., born June 20, 1990, and Thomas H., born November 22, 1992, juvenile dependents pursuant to section 360, subdivision (c). The father had physically abused Edward H., Jr., in January 1993. In addition, the parents left the two children alone in an filthy hotel room with inadequate food. The boys were also infested with head lice. At the May 1993 dispositional hearing, the court ordered the boys removed from their parents' custody pursuant to section 361, subdivision (b)(1) and (5), and it ordered the parents to participate in a variety of reunification services.

In June 1993, the Fresno County Department of Social Services (the Department) filed a supplemental petition (§ 387), alleging that in late May an older sibling, Anna H., stated she had been sexually abused by the father.[2] Following jurisdictional and dispositional hearings on this supplemental petition, the court found its allegations true and amended the reunification plan. In particular, the court ordered: "counseling for both parents, individual/conjoint and family as therapeutically recommended. And Mr. [H.] is to address the issues of sexual offense in either individual therapy or in a specific group."

At a 12-month status review hearing conducted in August 1994, the court terminated reunification services for the parents and set a section 366.26 permanency planning hearing. Although both parents made progress toward alleviating the conditions which led to the boys' dependency, there remained, in the court's words, "ongoing difficulty that the parents . . . faced in terms of reuniting with their children." In particular, despite several sessions of group psychotherapy for sex offenders, the father continued to deny any inappropriate sexual contact with any minors. Because beneficial sex offender treatment depended on the father's open acknowledgment that he participated in a sex offense, the coordinator of the sex offender treatment program suggested the father be terminated from the program.

Additionally, in mid-June 1994, while the boys visited with their parents, a domestic quarrel occurred between the mother and the father. The adults pushed and shoved each other while shouting at one another. The mother was sufficiently frightened of the father that she tried to leave their apartment. The father initially attempted to prevent her from leaving. The mother in turn called the police. The police notified child protective services who returned the children to their foster home. The following morning the father

---

[2]Although Anna H. was also adjudged a dependent child, the parents do not question any order relating to her.

locked himself in the apartment and attempted suicide. Section 5150 proceedings as to the father were initiated as a result. At the time of the 12-month review hearing, the father was in a residential treatment program.

The section 366.26 hearing was repeatedly postponed. On February 21, 1995, the section 366.26 hearing began with the parents submitting the matter on the Department's recommendation of long-term foster care as the permanent plan for the boys. However, a dispute arose over whether visitation should be reduced from once a week to once a month. As a consequence, each parent filed a section 388 petition.

By her petition, the mother sought a modification of the juvenile court's order terminating reunification services. She alleged the following changed circumstances: "Mother has substantially completed her court ordered programs, has had weekly visits with the children, and has prepared a home for the children that is safe. Mother & father no longer fight. Mother & father now live with each other again."

The father wanted a modification of the court's removal order and an order returning the children to his custody. He alleged the following changed circumstances: "Mr. [H.] has complied with reunification and requests the return of his children. He has been released from treatment and is stable."

Attached to the father's petition was a letter from the county mental health department which disclosed the father had participated in a daily therapy program between August and November 1994. The focus of this program was the improvement of the father's ability to deal with his depression. As a result of this therapy, the father showed some progress and appeared stable. The author of the letter, however, recommended individual therapy and/or marital counseling as well as a review of the father's need for medication.

The juvenile court referee signed an order setting the father's petition for hearing. Although there was no similar order with respect to the mother's petition, both petitions came before the juvenile court on March 30, 1995. At the outset of this hearing, counsel for the boys advised the court it could deny the section 388 petitions without a hearing if the petitions on their face showed no new or changed circumstances or it would not be in the minors' best interest. Minors' counsel and county counsel argued that both petitions were insufficient. In particular, they took the position the father's petition was devoid of any allegation he had completed the previously ordered sexual offender therapy. When questioned by the court about this subject, counsel for the father said that the father had been dropped from the program because he had "always taken the position that Anna wasn't [sic] telling the truth; that Anna was lying and that he didn't [sic] molest her."

The referee denied the father's request for a hearing. The referee found the father's petition to be insufficient on its face because it failed to mention the matter of the required sexual offender therapy. The referee also denied the mother's petition because she had alleged she was living with the father and he had not alleged compliance with the order concerning sexual offender treatment. Counsel for the father unsuccessfully applied for rehearing.

On May 10, 1995, the court selected adoption as the permanent plan for the boys. Because the Department had not yet located an appropriate adoptive family, the court stopped short of terminating the parents' rights pursuant to section 366.26, subdivision (c)(3).

The parents filed timely notices of appeal from the orders denying their petitions for modification and selecting adoption as the permanent plan.[3]

DISCUSSION

### I. *Motion to Dismiss*

■ As a preliminary matter, the Department asks this court to dismiss the parents' appeals to the extent they challenge the orders selecting adoption as the permanent plans for the minors.[4] In the Department's estimation, the permanent plan orders are interlocutory because the juvenile court did not terminate either parent's rights, and, as such, are not appealable.

Juvenile dependency law does not abide by the normal prohibition against interlocutory appeals (*Kinoshita* v. *Horio* (1986) 186 Cal.App.3d 959 [231 Cal.Rptr. 241]). As previously noted, all postdispositional orders in juvenile dependency matters are directly appealable without limitation, except for post-1994 orders setting a section 366.26 hearing. (§ 395, § 366.26, subd. *(l)*.) An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an

---

[3]The parents request that we take judicial notice of a mandamus petition and request for stay (*Edward H.* v. *Superior Court* (May 9, 1995) F023714 [nonpub. opn.]) which they filed with this court seeking an order compelling the juvenile court to hear their section 388 petitions. The parents apparently believe that a writ petition was necessary to preserve the issues they now raise on this appeal. They fail to cite, and we have not found, any authority which compels a writ petition in order to preserve issues for a subsequent appeal. All postdispositional orders are appealable without limitation, except for post-1994 orders setting a section 366.26 hearing. (§ 395, § 366.26, subd. *(l)*.)

[4]The Department's motion was made before the parents filed their opening brief. The Department also asked this court to dismiss any challenge to our order denying the parents' petition for writ of mandate. By order dated November 17, 1995, we deemed the scope of the appeal to not include any issues raised by the denial of the mandamus petition. As it turned out, the parents' opening brief, filed in September 1995, raised no such issues.

appeal has passed. (*In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 563 [283 Cal.Rptr. 483].) Thus, assuming a subsequent order terminating parental rights, the parents could not then dispute on appeal the court's earlier finding of adoptability or its express or implied determination that adoption would not be detrimental to the child(ren).

In something of an alternative argument, the Department claims it is unnecessarily oppressive and costly to permit what the Department classifies as "interim" appeals, such as those filed by the parents in this case. However, these considerations are policy matters within the legislative, not the judicial, domain.

## II. *Section 388 Petitions*

■ The parents claim the court erred by denying their respective section 388 petitions without a hearing. From their point of view, they alleged sufficient facts in each of their petitions to entitle them to an evidentiary hearing.

As a preliminary matter, we observe the juvenile court arguably did not deny the petitions ex parte; it did conduct hearings, though they were not evidentiary in nature. At these hearings, the court inquired specifically about the father's compliance with the court's prior orders. In effect, the court gave the father an opportunity to amend his petition or make an offer of proof that would justify an evidentiary hearing. However, by his concession that he still denied abusing his daughter and therefore had not completed sexual offender therapy, the father acknowledged that no rational purpose would be served by an evidentiary hearing. In other words, even assuming everything alleged by both parents and conceded by the father were proven at an evidentiary hearing, a change of circumstance warranting renewed reunification efforts, let alone the children's return, would not have been established. Regardless of whether the parents wished to admit the father's molestation of Anna H., the fact remains the court previously found, by clear and convincing evidence, that the abuse had occurred and posed a risk of substantial harm to all the children.

Assuming for the sake of argument the abbreviated hearing conducted in this case did not satisfy section 388, the court nevertheless did not err. Section 388 provides:

"Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new

evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. *The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction.*

*"If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held* and shall give prior notice, or cause prior notice to be given, to such persons and by such means as prescribed by Section 386, and, in such instances as the means of giving notice is not prescribed by such sections, then by such means as the court prescribes." (Italics added.)

 ██ The parent need only allege a prima facie case in order to trigger the right to proceed by way of a full hearing. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) If the petition discloses that a hearing would promote the best interests of the child, the court will order the hearing. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297].) The petition must be liberally construed in favor of its sufficiency. (*Ibid.*; see also Cal. Rules of Court, rule 1432(a).)

Applying the foregoing principles to the present case, we conclude the juvenile court properly denied a hearing on each parent's petition. First, the father's petition was insufficient because he failed to allege a circumstance "that requires changing the [court's] order." (Cal. Rules of Court, rule 1432(a)(6); *In re Jasmon O., supra,* 8 Cal.4th at pp. 398, 415.) In his petition, the father asserted he had complied with the reunification plan and had been released from treatment. The attached letter from the county mental health department confirmed his improvement, through counseling, in learning to deal with his depression. However, the father was required to obtain and complete more than general mental health counseling before he would be in a position to reunify with his children. As of the time the court terminated reunification efforts in August 1994, the father had failed to acknowledge he had molested his oldest child and failed to complete either individual or group therapy designed for the treatment of sexual abuse offenders. There is no indication anywhere in his section 388 petition that the father had thereafter satisfied either of these requirements or, at bare minimum, even made substantial progress in a sexual offender treatment program. Consequently, the father's petition simply failed to set out the requisite "changed circumstances."

Nevertheless, the parents claim that the only question left open by the father's petition was whether the three months of therapy in which he participated addressed sexual abuse issues. They say "this is precisely the sort of question that should be answered in an evidentiary hearing." We disagree, for two reasons. First, the attachment to the father's petition clearly states the purpose of the day therapy was to teach the father skills for coping with his bouts of depression. There was thus no need for an evidentiary hearing to affirm what was obvious from the face of the petition—the treatment received by the father did not address sexual abuse.

Second, to adopt the parents' position would endorse vague and evasive section 388 petitions. This is not the law. The references in *In re Marilyn H.*, *supra*, 5 Cal.4th at page 310, to a "prima facie" showing is not an invitation to section 388 petitioners to play "hide the ball" in pleading changed circumstances or new evidence. A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited. (*College Hospital Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 719, fn. 6 [34 Cal.Rptr.2d 898, 882 P.2d 894].) If a petitioner could get by with general, conclusory allegations, there would be no need for an initial determination by the juvenile court about whether an evidentiary hearing was warranted. In such circumstances, the decision to grant a hearing on a section 388 petition would be nothing more than a pointless formality.

Likewise, the mandate requiring courts to give a liberal construction to a section 388 petition does not authorize a petitioner to avoid describing the purported changed circumstances or new evidence. Section 388 and the pertinent rule of court (Cal. Rules of Court, rule 1432(a)(6)) require that the petition itself demonstrate that the prior order should be altered. (*In re Jasmon O., supra*, 8 Cal.4th at pp. 398, 415.) This standard would not be satisfied if the petition were allowed to consist of general averments rather than specific allegations describing the evidence constituting the proffered changed circumstances or new evidence.

█ In addition, the court properly denied a hearing on the mother's petition. While her petition contained allegations of changed circumstances, it also included the statement that she was living with the father. This fatally undermined her petition because the father could not establish that he had met the requirements of the reunification plan with respect to the completion of sexual offender therapy. Although a juvenile court will order a hearing if a section 388 petition presents any evidence supportive of a conclusion that a hearing would promote the child's best interests (*In re Jasmon O., supra*, 8 Cal.4th 398, 415), it need not ignore an allegation which shows a hearing will not promote such interests.

Even assuming the petitions sufficiently pled changed circumstances, the order denying an evidentiary hearing did not prejudice the parents. As previously noted, nothing would have been gained had the cause gone to a full hearing because the father conceded he had not, and in all likelihood would not, participate in a sexual offender treatment program.

Finally, at oral argument, appellants' counsel argued the trial court denied the mother due process because she had no notice that living separate from the father was a requirement of reunification. The issue, however, is not one of notice. Indeed, the mother was not living with the father for much of the reunification period. Thus, there was no need for such a provision in the mother's plan when the court amended the father's reunification plan to require sexual abuse therapy.

Instead, the critical question was whether the best interests of the children might be promoted by the proposed change of order (§ 388), which in the mother's case was a return to reunification. At the point of these proceedings—on the eve of the section 366.26 permanency planning hearing—the children's interest in stability was the court's foremost concern and outweighed any interest in reunification. (*In re Marilyn H.*, *supra*, 5 Cal.4th at pp. 307-309.) Thus, the prospect of an additional six months of reunification to see if the mother would and could effectively separate from the father would not have promoted stability for the children and thus would not have promoted their best interests.

### DISPOSITION

The orders denying the parents' respective section 388 petitions are affirmed.

Stone (W. A.), Acting P. J., and Harris, J., concurred.