[No. G033794. Fourth Dist., Div. Three. Aug. 31, 2004.]

In re CODY C., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
TINA C., Defendant and Appellant.

COUNSEL

Craig E. Arthur, under appointment by the Court of Appeal, for Defendant and Appellant.

Benjamin P. de Mayo, County Counsel, and Beth L. Lewis, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

OPINION

**O'LEARY, Acting P. J.**—Tina C. appeals from an order continuing the permanency hearing (Welf. & Inst. Code, § 366.26)[1] for 180 days to allow additional time to find adoptive parents for her sons, six-year-old Cody and four-year-old Justin. She contends there is insufficient evidence to support the finding the boys had a probability for adoption. We agree with the Orange County Social Services Agency (SSA) that the finding is only interim and thus not appealable. Because this appeal is premature, we dismiss.

## FACTS

Little needs to be said regarding the facts of this dependency proceeding; they are set forth adequately in our prior unpublished opinion in which we affirmed the order made at the 12-month review hearing terminating services and scheduling a permanency hearing. (*Tina C. v. Superior Court* (Nov. 13, 2003, G032796) [nonpub. opn.].) Suffice it to say, the boys (and their two teenage sisters who are not subjects of this appeal) were declared dependent children due to Tina's chronic drug use and her inability to provide a safe and sanitary home.

The boys had been placed together with a foster mother who had wanted to adopt them. But the boys had increasingly severe behavioral problems (including attachment disorder, defiance, aggressiveness, and sleep disorders), and the foster mother ultimately (for other personal reasons) decided she could not adopt them. On December 18, 2003, SSA reported that although the boys were "adorable," their behavior problems made them "unadoptable at this point in time." Subsequently, a neurological assessment was conducted on Justin and it was determined his problems were definitely behavioral. The evaluator believed the weekly family visits Justin had with his mother and sisters were a contributing factor to his maladjustment and recommended

---

[1] All further statutory references are to the Welfare and Institutions Code.

visits cease. On January 29, 2004, SSA again reported the boys were not currently adoptable, but with intense treatment they likely would be adoptable in the future. On February 6, the boys were moved to Orangewood Children's Home due to their behavioral problems, which continued to worsen after family visits. SSA's plan was to stabilize the boys' behavior before attempting to place them in another adoptive home. They were moved to a group home.

At the permanency hearing on March 30, SSA reported a new prospective adoptive home had been found and preplacement would begin in April. The boys' psychologist reported they were no longer exhibiting the severe behavioral problems that had previously been reported. Many of Justin's problems had almost completely disappeared. The boys' weekly visits with Tina had been curtailed. Both boys went to twice-weekly behavior coaching. They each had their good days and bad days, but their "tantrums" were largely considered normal for a group home setting.

The court found termination of parental rights would not be detrimental to the children, and they both had a probability for adoption but were difficult to place. It identified adoption as the permanent placement goal and continued the permanency hearing for 180 days to September 28, 2004, ordering that efforts be made to locate an appropriate adoptive family.

## DISCUSSION

██ Tina contends there is insufficient evidence to support the finding the children have a probability for adoption. We agree with SSA that the appeal is premature. As we explained in *In re Jacob S.* (2002) 104 Cal.App.4th 1011, 1019 [128 Cal.Rptr.2d 654], the contention is premature, because the court has not yet found the minors to be adoptable. "The court did not find that [the minor] is likely to be adopted, but only determined that adoption was probable and that [the minor] is difficult to place because of his disability. Under such circumstances, section 366.26, subdivision (c)(3), provides that a court may 'identify adoption as the permanent placement goal and without terminating parental rights, order that efforts be made to locate an appropriate adoptive family for the child within a period not to exceed 180 days.' [¶] Because of [the minor's] disability and the fact that an adoptive home for him has not yet been found, the court took advantage of section 366.26, subdivision (c)(3) to set another permanency hearing in 180 days, at which time it will determine whether [the minor] is adoptable. The outcome will largely depend on whether an adoptive family has been found for [him].

At that time, the court will make its final determination . . . . Until that final determination is made, [the mother's] contention is not ripe for review." (*In re Jacob S., supra,* 104 Cal.App.4th at p. 1019.)

Tina urges us to disregard our ruling in *In re Jacob S., supra,* 104 Cal.App.4th 1011, and follow *In re Edward H.* (1996) 43 Cal.App.4th 584 [50 Cal.Rptr.2d 745] (*Edward H.*), which held such an order was appealable since "all postdispositional orders [in juvenile dependency matters] are directly appealable without limitation," except for orders setting a permanency hearing. (*Id.* at p. 590, fn. 3.) In *Edward H.,* as in the case before us now, the county department of social services (the Department) was seeking to have the parents' appeal dismissed. We find the court's analysis was flawed as it failed to address the Department's assertion that any findings made at the first of a two-phase section 366.26 hearing are necessarily interlocutory, as there is only one ultimate determination to be made, i.e., selecting a proper permanent plan.

■ If the court initially identifies adoption as the permanent placement goal, which is the statutorily preferred plan (§ 366.26, subd. (b)(1)), but recognizes placement may be problematic, it sets the next hearing to allow further time to address that issue. If promising placement options are not identified, the court cannot order the termination of parental rights. (See § 366.26, subd. (c)(1), stating in pertinent part, "[i]f the court determines . . . by clear and convincing [evidence], that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption.") It would then have to turn to the other permanent options identified in the statute and any interim findings made in support of adoption (e.g., a probability for adoption) would become moot.

■ We simply cannot agree with *Edward H.,* that an appeal is proper from some aspect of a section 366.26 proceeding prior to the conclusion of the entire hearing and the court's issuance of a final order. Here, the court did not make a ruling as to the permanent plan, nor did it make the requisite finding of adoptability. Rather, it merely chose adoption as the "permanent placement goal," based on a probability of adoption, and continued the permanency hearing. Because the permanency hearing has not been concluded, there is nothing yet to appeal.

The appeal is dismissed.

Moore, J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 10, 2004.