Filed 2/26/14  In re T.P. CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.P., et al., Persons Coming Under the Juvenile Court Law | H039690 (Santa Cruz County Super. Ct. Nos. DP002287, DP002474) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. H.P., Defendant and Appellant. | |

H.P., the father (Father) of now six-year-old T.P. and her younger sister L.P., appeals from orders denying a full contested hearing on his petition to modify a juvenile court order (Welf. & Inst. Code, § 388)[1] and terminating his parental rights (§ 366.26).

We will affirm the orders.

---

[1] All statutory references are to the Welfare and Institutions Code.

FACTS

T.P., born in November 2007, became the subject of a dependency petition to the Santa Cruz Juvenile Court on June 2, 2010, when she was two and a half years old, and was declared a dependent of the court shortly thereafter. Her sister, L.P., who has Down Syndrome, became the subject of a dependency petition on June 15, 2011, at the age of 10 months, and also was declared a dependent of the court shortly thereafter. T.P. was initially allowed to remain with her mother, S.G. (Mother), whereas L.P. was initially placed outside the home with another relative. Reunification services were not ordered for Father, who was then incarcerated.

T.P. was eventually removed from placement with Mother and family reunification services were subsequently provided to Mother for both children.

Father failed to appear for the six-month, 12-month and 18-month status review hearings, for an 18-month settlement conference hearing held shortly after the 18-month status review hearing, and for a contested hearing on January 18, 2013.[2] Father did,

_____

[2] Father contends on appeal that he was incarcerated for the 18-month status review hearing, which was held on December 11, 2012, and could not attend it. The record to which Father refers us, however, shows only that he was in jail for a 30-day period sometime between December of 2012 and March of 2013, with no specific dates appearing.

It is possible that incarceration caused Father to miss the 18-month status review hearing and the settlement hearing, which followed on January 8, 2013. But it seems unlikely that, if serving a 30-day jail sentence, he could have missed all of the hearings held between December 11, 2012, and January 18, 2013.

A social worker's report stated that Father "was reportedly due to turn himself into the Santa Cruz County Jail on November 16, 2012," but as of the writing of that report, which was November 27, 2012, "the father has failed to do so." At the section 366.26 hearing, counsel for the Santa Cruz County Human Services Department acknowledged that Father may have been incarcerated for the December 11, 2012, hearing, but pointed out that he failed to appear for the January 18, 2013, contested hearing.

In sum, the record is unclear, so far as our parsing of it has revealed, on Father's whereabouts and freedom around the time of the 18-month status review hearing and the

*(footnote continued)*

2

however, attend an interim review hearing held on March 15, 2012. Despite that appearance, it was Father's failures to appear at a number of other key court sessions that would later lead to the juvenile court's decision not to order reunification services for him at the last minute when T.P. and her sister L.P. were ready to be permanently placed in a stable adoptive home. The juvenile court also recognized that Father and the girls got along well and that Father had made sporadic efforts to engage in parenting services, but this did not outweigh the need to continue proceeding towards a permanent plan of adoption in the best interests of the children.

Mother failed in her case plan and her reunification services were terminated at a hearing Father did not attend. The juvenile court set a hearing under section 366.26 to determine a suitable permanent plan for the two children. They had been placed in the home of a great-aunt who was willing and able to provide them a permanent home, and the Santa Cruz County Human Services Department (Department) recommended that adoption be the permanent plan.

The report the Department filed for the section 366.26 hearing stated that Father had initially appeared at an interim review hearing on March 15, 2012, but had not returned to court since. He had been visiting the girls monthly since March of 2013 with the caregiver's agreement and had brought them a pair of shoes recently. On the other hand, the Department's social worker explained in the report, "he is not involved in the day to day care of his daughters and does not attend any school activities or medical appointments" with them.

When the Department reported in writing to the juvenile court in advance of the 18-month status review hearing, it stated that Father's visits with his daughters had

two hearings that followed in January, and his briefs on appeal do not help to clarify these matters.

"become inconsistent." The report noted that at the beginning of the reporting period, Father was visiting with the girls twice or three times every week, and the visits were successful in terms of their interaction with him, but in the last few weeks he had missed certain scheduled visits. Father did not visit the girls from December of 2012 to March of 2013. As noted, this may have been, in part, because he was serving a 30-day jail term around this time.

Father filed a section 388 petition, i.e., a petition to modify court orders, which was heard at the same juvenile court session for which the permanent plan hearing was scheduled. Father's modification petition requested that the juvenile court make two orders: (1) recognize Father as the presumed father of both children, and (2) order that Father be provided family reunification services.

The juvenile court held a hearing on the section 388 petition. After disagreeing with Father's assertion that the juvenile court had denied him presumed father status,[3] the court addressed whether the section 388 petition warranted a full evidentiary hearing on Father's request for reunification services—which would essentially suspend the section 366.26 proceeding as to him.

The juvenile court reviewed the history of Father's efforts to solidify his relationship with his children and found them lacking. In March 2012, two months after being freed from custody, Father made his first appearance in the juvenile court and requested counsel. But on August 21, 2012, the date scheduled to consider Father's possible presumed father status and to hold the 12-month status review, Father "no-showed." The proceedings were rescheduled for August 30, 2012. On that date too, the

[3] The juvenile court noted that this issue had arisen at a prior court session, at which time the court made no findings relating to presumed father status. Instead, the court assigned Father with a court-appointed attorney and indicated it would address the issue of presumed father status at a later date.

4

court observed, Father once again failed to appear. "So we gave Father an opportunity to step forward to have a legal standing," the court commented, "be participatory in this case and so that it wouldn't all be on Mother, and that he could have a case plan and work towards building a relationship with his children and . . . try [to] unify with the children, as well."

Father also failed to appear for the 18-month status review hearing, leaving the burden of arranging the children's future fully "on mom," the juvenile court commented. Once again "Dad never showed, never had his attorney reschedule, recalendar, never stepped forward to assert any position in this case at all."

The juvenile court stated, "now that the children are in a stable placement, well cared for by adults that are fully engaged and meeting their special needs, the Court cannot find that there is a best interest for the children to engage with Father at this time." Finding Father had undertaken no "meaningful" steps "to make a significant change for the options for the girls," the court denied his petition without fuller consideration of it and terminated both parents' parental rights at a later hearing under section 366.26.

DISCUSSION

Father claims that the juvenile court abused its discretion in summarily denying his petition for modification of a previous order (§ 388, subd. (a)(1)). There was no abuse of discretion.[4]

---

[4] The substance of Father's appeal is against the juvenile court's section 388 order. He mentions in passing that the section 388 determination was a predicate to the court's order terminating his parental rights and that he challenges both orders. But the section 366.26 claim is perfunctorily asserted and without supporting argument and we need not address it further in our discussion. (E.g., *People v. Marshall* (1990) 50 Cal.3d 907, 945, fn. 9.)

"The determination of whether to change an existing order is 'committed to the sound discretion of the juvenile court, and [its] ruling should not be disturbed on appeal unless an abuse of discretion is clearly established.' [Citation.] An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.) In addition, "where two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the juvenile court." (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1093.)

The juvenile court may deny a section 388, subdivision (a)(1) petition if it "fails to state a change of circumstance or new evidence that may require a change of order or termination of jurisdiction or fails to show that the requested modification would promote the best interest of the child." (Cal. Rules of Court, rule 5.570(d) [speaking of the court's ability to deny such a petition ex parte].) "Unless the moving party makes a prima facie showing of both elements, the petition may be denied without an evidentiary hearing." (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 642.)

As the Department notes in answer to Father's appeal, Father waited to file his section 388 petition until the children were ready for permanent placement and the juvenile court was on the verge of making a permanent plan for them. His motion was properly denied because it came at the proverbial eleventh hour, too late and thus at too much risk for the children's welfare.

"On the eve of a section 366.26 hearing, the child's interest in stability is the court's foremost concern, outweighing the parent's interest in reunification. Thus, a section 388 petition seeking reinstatement (or, in this case, initiation) of reunification services must be directed at the best interest of the child." (*In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1348-1349.) The juvenile court could reasonably find that, as in *In re Edward H.* (1996) 43 Cal.App.4th 584, "the prospect of an additional six months of

6

reunification . . . would not have promoted stability for the children and thus would not have promoted their best interests." (*Id*. at p. 594.)

We have noted that Father may have been in jail and unable to attend the December 11, 2012, 18-month status review hearing. This is far from clear, however, and Father's cursory reference to two pages of the clerk's transcript does not support his assertion that this was the case. " 'The appellate court is not required to search the record on its own seeking error' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246), although we have looked through the record in an effort to establish the chronology of events. In any case, even if the juvenile court was incorrect in its implication that Father could have appeared on December 11, 2012, and failed to do so for a reason other than incarceration, it would not detract from the court's other point that he "never had his attorney reschedule, recalendar, never stepped forward . . . ." Moreover, Father's counsel did not attempt to correct the court on the question of timing during the relevant hearing. Finally, the record supports the court's view that Father was not sufficiently engaged in his children's future. On January 18, 2013, the court found that "the progress made by the child's alleged father, [H.P.], toward alleviating or mitigating the causes necessitating placement in foster care has been minimal."

In sum, there was no abuse of discretion in denying Father's section 388 petition, and his section 366.26 claim is unavailing for reasons stated in this opinion.

## CONCLUSION

The orders are affirmed.


_____
Márquez, J.


WE CONCUR:




_____
Rushing, P. J.




_____
Premo, J.