Filed 5/2/16  In re T.B. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re T.B. et al., Persons Coming Under the Juvenile Court Law. | B266476 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>J.B.,<br><br>      Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK28454) |

APPEAL from an order of the Superior Court of Los Angeles County, Julie Blackshaw, Judge.  Affirmed.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

Two years after the juvenile court terminated dependency jurisdiction with a legal guardianship in place in New Jersey, J.B. (Mother), who now lives in Nevada, filed a petition under Welfare and Institutions Code section 388 (section 388 petition), seeking an order placing her three children with her and/or reinstating reunification services.[1] Mother argued that although she had been unable to visit the children frequently in person, she maintained a stable and constant relationship with them through frequent telephone calls and weekly Skype sessions. The juvenile court denied the motion, finding Mother failed to establish reunification would be in the best interests of the children, who had long enjoyed a stable living arrangement in New Jersey with a paternal aunt. On appeal, mother contends the court's order was an abuse of discretion. We affirm.

## BACKGROUND

### A. Prior Dependency Proceedings

We take the preliminary facts from our opinion on a prior appeal in this matter, *T.B. v. J.B.* (Oct. 30, 2014, B252905 [nonpub. opn.]) (hereafter B252905).

The Department of Children and Family Services (DCFS or the department) and "the juvenile court first became involved with this family in 1997 when [T.B.'s (Father's)] and Mother's first born son, T.B., was an infant. Mother was 16 years old when the juvenile court sustained counts in a dependency petition under section 300, subdivision (b), that (1) Mother was a minor and lacked the resources to provide for T.B., and (2) Mother used marijuana on at least two occasions. In June 1997, the court declared T.B. a dependent child. Mother failed to reunify with T.B., and the court appointed the maternal grandmother T.B.'s legal guardian. In 2001, the court terminated the legal guardianship and allowed Mother to regain care, custody and control of T.B. It is not clear from the record whether Father was involved with Mother and T.B. during this period.

---

[1] Further statutory references are to the Welfare and Institutions Code.

"In January 2008, DCFS again became involved with this family. T.B. was 10 years old, and Father and Mother now had three more sons: Ju.B. (6), D.B. (4), and Jo.B. (2). In June 2008, the juvenile court sustained counts in a dependency petition under section 300, subdivision (b), that (1) Father and Mother engaged in violent altercations in the children's presence, Father had convictions for corporal injury to a spouse, battery and assault with a firearm, and Mother failed to protect the children by allowing Father to live with the children; (2) Mother had an unresolved history of substance abuse, including marijuana, and had a drug pipe in the home where the children could access it; (3) Father had a history of substance abuse, had a drug pipe in the home where the children could access it, was a current abuser of alcohol, and had a conviction for driving under the influence; and (4) Father and Mother left the children in the home for days at a time without making a plan for the children's care and supervision. The court ordered family preservation services for Mother, and apparently allowed the children to remain in or return to the home at some point with Mother. The court did not order reunification services for Father because he was incarcerated in 2008 after DCFS opened the case, on a charge not specified in the record, and he would remain incarcerated until 2011.

"In December 2009, Mother tested positive for cocaine. DCFS detained the children from Mother's care and supervision. In January 2010, the juvenile court sustained counts in a supplemental petition that (1) Mother failed to comply with court orders requiring her to participate in random drug testing and family preservation services, and she had the positive toxicology screen for cocaine in December 2009; and (2) Mother had a history of petty theft convictions. The court terminated Mother's reunification services. Mother was incarcerated in 2010 and released a year later in 2011 on a charge not specified in the record.

"On December 1, 2010, the juvenile court filed letters of guardianship, appointing the children's paternal grandmother, Barbara G., as the children's guardian. The children lived in New Jersey with Barbara. On June 29, 2011, the court filed letters of guardianship, appointing Barbara G. and the children's paternal aunt, D.G., as the children's co-guardians. Also on June 29, 2011, the court terminated dependency

3

jurisdiction. Barbara G. died in December 2012. The children remained living in New Jersey with D.[G.]" (B252905, *supra*, at pp. 3-5.)

**First Section 388 Petitions**

"On April 5, 2013, Father filed his section 388 petition, seeking an order granting him reunification services and expressing his desire to have custody of the children. He explained, since his release from incarceration in 2011, he had had stable housing for two years and had been employed for one year and nine months. He had maintained daily contact with the children and had visited them in New Jersey. Father stated, due to his changed circumstances, all parties supported his request for a change in order and believed it would be better for the children to be reunified with him." (B252905, *supra*, at pp. 5-6.) DCFS recommended that the juvenile court grant Father's petition and order reunification services and a case plan for him.

"On August 22, 2013, Mother filed her section 388 petition, seeking an order returning the children to her custody or Father's custody, and/or reinstating her reunification services. In support of her petition, Mother stated she had been sober for more than three and one-half years and had 'refrained from' domestic violence. She also had steady employment as a data collector and stable housing. She maintained constant telephone contact with the children and paid for their cellular telephone service. She also had 'weekly Skype sessions with the children.' She addressed the children's behavioral issues during telephone calls. She visited the children in New Jersey in January 2013. Mother stated, 'the children always spontaneously communicate to [her] their desire to return home to [her] and their father in California.' She noted one of the children's two legal guardians died in December 2012." (B252905, *supra*, at pp. 9-10, fn. omitted.)

DCFS recommended that the juvenile court grant Mother's petition and order reunification services and a case plan on the ground that she "appear[ed] to have matured during the last three years and she appear[ed] ready to take on the responsibility of being a full time parent to the children." (B252905, *supra*, at p. 10.)

In a September 23, 2013 report, "DCFS summarized the information Mother provided in her September 19, 2013 interview with the dependency investigator. Mother

4

had been sober for a few years. She had not engaged in any criminal activity since her release from incarceration in 2011. She obtained housing and employment upon her release, and also submitted to drug testing. She and father lived together and were 'working to regain custody of the children.' They also were working on their relationship and Mother stated she would speak to Father about the investigator's suggestion that Mother and Father attend couples counseling. Mother was willing to live apart from the children's maternal grandmother if that was a condition of the court granting her reunification services. In the event the court denied her request for reunification services, she was hopeful the children would reunify with Father.

"DCFS reported that Father and Mother's three youngest sons, Ju.B. (12), D.B. (10), and Jo.B. (8), wanted to return to California to live with Father and Mother. The oldest son, T.B. (16), wanted to finish high school in New Jersey where he was a football player and being scouted by college football programs. T.B. was supportive of Father and Mother's efforts to regain custody of his three younger brothers.

"DCFS also reported: 'The legal guardian [D.G.] is in favor of the mother [and father] receiving Family Reunification Services as the children want to return to their parents, both mother and father.' [D.G.] confirmed that Mother maintained telephone contact with the children and paid for their cellular telephone service. According to [D.G.], Mother only visited the children in New Jersey once when [D.G.] paid for Mother and Father to fly to New Jersey for the paternal grandmother's funeral. Although [D.G.] did not have a good relationship with Mother, she approved of the children returning to both parents because she wanted the children to be happy. [D.G.] expressed some reservation, however, because the children were doing well in New Jersey and she did not want them uprooted unless Father and Mother were ready to be good parents. [D.G.] wanted Mother to stop telling the children they would be back with her in California in six months in case it did not happen. [D.G.] supported T.B.'s desire to remain with her in New Jersey, as did Mother and Father." (B252905, *supra*, at pp. 11-13.)

"On September 27, 2013, DCFS filed a supplemental report regarding Father's section 388 petition. DCFS reported Father was participating in an alcohol and drug

program, had attended 11 of the 20 required sessions, and had tested negative. Father also was participating in a parenting program and had attended three sessions in the 12-session program. DCFS continued to recommend the juvenile court order reunification services and a case plan for Father." (B252905, *supra*, at p. 13.)

"On October 11, 2013, DCFS filed a supplemental report in response to the section 388 petitions. DCFS reported Father and Mother came into a DCFS office on October 9, 2013 to meet with the dependency investigator. Father brought documentation showing he had attended five sessions of his parenting program. According to DCFS, Father missed one session on September 24, 2013. Mother brought documentation showing she had enrolled in an alcohol and drug program on October 2, 2012, and had enrolled in a parenting program in which she had attended three sessions since August 27, 2013. The investigator interviewed Father and Mother together and separately and noted 'there was tension between them.'

"Mother informed the dependency investigator she planned to move from the home of the children's maternal grandmother and live by herself. The investigator stated in the October 11, 2013 report: 'The mother reported that she does not want anything to stand in the way of the possibility of her receiving Family Reunification Services and she wants to prove that she is responsible and is now in a position to provide and care for the children. . . . The mother also reported that she and [Father] have different things to prove and it is best that they not live together at this time. She reported that there [may be] a possibility that eventually the[y] will get back together, however, if not she will be prepared whether she received Family Reunification Services or he receives Family Reunification Services.' Mother remained employed.

"After leaving the DCFS office on October 9, 2013, Father called the dependency investigator and informed her he planned to move out of the maternal grandmother's home in early November 2013 to live on his own. Father explained: '"Well she [Mother] is moving her way and I am moving my way for a time. Maybe later we can come together. We both have things to prove . . . . Things have changed and we have differences; no problems, just a decision that was made."' The investigator suggested to

Father that he and Mother go to counseling to address the past and present issues in their relationship. Father was amenable to the suggestion, and stated he would speak with Mother and '"get on this immediately."' Father also told the dependency investigator he remained employed in a '"secure"' job which allowed him to work overtime, and he was '"trying to find a second job."' Father further reported he was in compliance with the terms of his parole and continued to drug test.

"As stated in its October 11, 2013 supplemental report, DCFS continued to recommend that the juvenile court order reunification services and case plans for Father and Mother. DCFS also recommended Father and Mother attend counseling to address the issues which led to the prior dependency jurisdiction. DCFS believed 'It would be in the best interest of all parties that the prior issues be addressed in order for [Father and Mother] to fully focus on the children if and when the children are returned to their care and custody.'" (B252905, *supra*, at pp. 14-17.)

Despite DCFS's recommendations, the juvenile court found the parents had made no showing of a change of circumstances, and further found it would not be in the best interests of the children to hold an evidentiary hearing on the section 388 petitions. It therefore denied the parents an evidentiary hearing.

**Prior Appeal**

On December 10, 2013, both parents appealed, and on October 30, 2014, we reversed the juvenile court's order and remanded the matter with directions to hold evidentiary hearings on the section 388 petitions.

**Subsequent Section 388 Petitions**

On February 6, 2014, Mother, after filing her notice of appeal in B252905 but before our ruling, filed another section 388 petition. In it, she stated she was employed, had secured an apartment, and had been sober for four years. Attached to the petition were an October 2013 residential lease agreement showing Mother as a lessee in Antelope Valley, California, a certificate showing she had enrolled in an alcoholism and drug dependency diversion program, a certification of completion of a 12-week parenting course, and a letter of recommendation from her employer. Mother initially sought

7

termination of the children's legal guardianship, but by the time of the hearing was seeking only reinstatement of reunification services.

On July 15, 2014, Father, after filing his notice of appeal but before our ruling in B252905, filed another section 388 petition, representing he had completed all court-ordered programs, secured employment, terminated his relationship with Mother, and obtained housing adequate for the children.

The juvenile court heard both petitions on June 22, 2015. In preparation for the hearing, DCFS reported Father had moved to New Jersey, near the children, saw them almost every day, was building a parent-child relationship with them, and had secured employment. All the children represented they wanted to reunite with him. Based on this, DCFS recommended that reunification services for Father be reinstated.

The juvenile court found that Father's circumstances had changed, he had "developed a close and consistent relationship with the children," and it was in their best interests that his reunification services resume. It therefore granted Father's petition in part and reinstated reunification services, but declined to terminate the children's guardianship.

DCFS offered no new information pertaining to Mother's petition.

Mother testified she had been sober since 2010, had secured housing in Las Vegas, and worked two jobs, "usually 18-hour days." She talked to the children "all the time" on the phone and by social media, purchased clothes for them and helped with expenses, and spoke with Father daily regarding family issues, keeping up to date on "everything that's going on in" the children's lives. She had the financial means to visit the children in New Jersey but had not yet done so (other than one trip in January 2013 to attend their grandmother's funeral) because she thought the guardian would disapprove, and she did not want to "overstep those boundaries." Mother stated the children told her they loved her and wanted her "to come back." She was willing to participate in any services.

DCFS and the minors' counsel opposed reunification services for Mother on the ground that she failed to show changed circumstances.

8

The juvenile court found Mother was "very credible," her circumstances had changed, and she had been "sober since 2010." However, the court found Mother presented little evidence that reunification services would be in the best interests of the children. The court distinguished Mother's situation from Father's, finding "Father is there, and he is involved in the lives. He is becoming very close to them." The court did not "see that evidence . . . from Mother." The court denied Mother's petition without prejudice to her filing a later petition containing evidence that reunification would be in the children's best interests.

Mother timely appealed.

On December 22, 2015, DCFS filed a section 388 petition seeking termination of the children's guardianship and placement with Father in New Jersey. Mother indicated she was not opposed to the change. On December 29, 2015, the juvenile court granted the petition and continued the matter for a contested hearing regarding the terms of Mother's visitation.[2]

## DISCUSSION

Mother argues the juvenile court abused its discretion in declining to reinstate reunification services. We disagree.

A parent or any interested person may petition the juvenile court for modification of a prior dependency order. (§ 388, subds. (a), (c).) To obtain the modification, the petitioner must show by a preponderance of evidence that there has been a sufficient change of circumstances to warrant the change, and that the change would be in the child's best interests. (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 532-535.) We review the juvenile court's denial of a section 388 petition for abuse of discretion. (*In re Jasmon O*. (1994) 8 Cal.4th 398, 415.) "We must uphold the juvenile court's denial of [a] section 388 petition unless we can determine from the record that its decisions "'exceeded the bounds of reason. When two or more inferences can reasonably be

---

[2] Mother's request for judicial notice of the juvenile court's minute order of December 29, 2015 is granted.

9

deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citations.]'" (*In re Brittany K*. (2005) 127 Cal.App.4th 1497, 1505.)

After termination of reunification services, a parent's interest in the care, custody and companionship of her child is no longer paramount, as the court's focus has shifted squarely to the child's need for permanency and stability. A petitioner's burden post-reunification is thus particularly weighty, because the children's interest in stability outweighs any interest in reunification. (*In re Angel B*. (2002) 97 Cal.App.4th 454, 464; see *In re Edward H*. (1996) 43 Cal.App.4th 584, 594.) To evaluate a child's best interests, we consider, among other things: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F*., *supra*, 56 Cal.App.4th at p. 532.)

Here, the juvenile court found Mother's circumstances had significantly changed, and it expressed no reservations concerning the seriousness of the problem that led to the dependency, the difficulty of removing that problem, or the degree to which the problem had actually been removed. We therefore need not address respondent's arguments concerning deficiencies in Mother's proof of sobriety.

The main issue is the strength of the bonds between the children and their parents and caretakers. Here, by the time of the hearing in June 2015, the children, ages 10, 12, and 14, had been in guardianship in New Jersey with a paternal aunt for five years. Mother, who lives in Las Vegas, had visited them in person only once, in January 2013. Although she frequently visited with the children by phone, Skype and social media, these long distance interactions could not compare with the day-to-day, hour-to-hour interactions between the children and their guardian. They also paled in comparison to Father's interactions with the children, as he lived near them, saw them almost every day, and assisted in managing their school and personal lives. The juvenile court could reasonably conclude the permanency and stability the children enjoyed from these

interactions far outweighed any benefit they would receive from reunification with Mother. We therefore cannot say the court exceeded the bounds of reason in finding that Mother's frequent conversations by telephone and social media failed to demonstrate reunification was in the children's best interests.

## DISPOSITION

The juvenile court's order is affirmed.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:



JOHNSON, J.



LUI, J.


11