Filed 1/31/25  In re I.C. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re I.C., a Person Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH & HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. F.O., et al., Defendants and Appellants. | A170828, A170916 (Solano County Super. Ct. No. J45610) |

F.O. (Father) and C.C. (Mother) have appealed after the juvenile court denied Father's request for additional reunification services and terminated their parental rights to their son, I.C. (Minor).  They contend the inquiry under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.)[1] was inadequate.  The Solano County Health and Social Services Department (the Department) properly concedes this point.  Father and Mother also argue that the juvenile court erred in denying,

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

1

without a hearing, Father's request to change the order terminating his reunification services.  We reject this contention.  We shall conditionally reverse the order terminating parental rights to allow the Department to fulfill its duties under ICWA, and otherwise affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Jurisdiction and Disposition*

Mother tested positive for fentanyl and cocaine when Minor was born in July 2022.  Minor was removed from his parents' custody and placed in foster care; he has remained in the same placement since shortly after his birth.  The Department filed a dependency petition, and on February 21, 2023, the juvenile court sustained allegations that Minor tested positive for those substances, that Mother had limited prenatal care, that her substance abuse impaired her ability to care for Minor, and that her actions placed him at substantial risk of physical illness or harm.

The juvenile court found it would be detrimental to place Minor with Father, and it ordered reunification services for both parents.[2]  Father was elevated to presumed father status.

*May 2023 Review Hearing*

According to a May 2023 report, Minor experienced developmental delays, and he had been referred to the North Bay Regional Center.  Although Father did not have any concerns about Minor's development, he agreed to sign the required paperwork.

Father had been searching for permanent housing, and after being assigned a social worker to assist him, he found housing in February 2023.

---

[2] We need not detail Mother's performance during the reunification services, as she raises no challenge either to the services she was offered or to the juvenile court's findings regarding her compliance.

He did not have a bed or car seat for Minor. His case plan required him to complete courses in parenting and to visit Minor and meet his needs during visits. When Father began a new job in April 2023, though, he began to miss or shorten his visits, and he had no plans for child care if Minor were placed in his care. He had completed a two-hour seminar on child raising, as well as a 12-hour parenting course. Mother had not been participating in her case plan.

At an interim review hearing on May 16, 2023, the court ordered that Minor remain in out-of-home care and that the parents continue to receive reunification services.

### Six-Month Hearing

By August 2023, Father was living in permanent housing. The Department had informed him that he would need to pay ten percent of his subsidized rent for the unit; although Father said he thought he should not have to contribute anything toward his rent, he agreed to do so.

At the time, Father reported being employed, although on a per diem basis, and his work hours were irregular. He had missed or cut short some visits because of his work schedule, and he still had no plans for Minor's child care while he worked.

The social worker assigned to the case had contacted a program in April 2023 to arrange one-on-one parenting education for Father and had given Father the contact information. The social worker suggested multiple times that Father avail himself of the one-on-one parenting education she had arranged, but he had not done so. The social worker also provided contact information for a "Nurturing Fathers" program, to help Father build a support network of other fathers, and discussed with him the importance of play and socialization for Minor's development. Nevertheless, in a June

conversation, Father described toys as "wants and not needs," and he did not seem to understand that children enjoy and learn through play. He saw providing toys as "spoiling" Minor.

During visits, Father was sometimes unaware of or inattentive to Minor's needs. For instance, he did not feed Minor solid food, and he made formula incorrectly despite having been shown many times how it should be made.

Mother had not responded to the social worker's attempts to meet with her. She had visited Minor only sporadically.

The staff at the regional center had concluded Minor would benefit from services to assist with his development, as his reflexes, locomotion, and stationary skills were delayed.

On August 1, 2023, the juvenile court terminated Mother's reunification services and continued services for Father.

***12-Month Review and Termination of Father's Services***

By the time of the 12-month hearing on October 17, 2023, Father was unemployed and living in his car. He was seeking work and was enrolled at a local community college.

Minor was engaging in physical therapy and therapy for his developmental disabilities, and his speech was delayed. He was making progress in his services. However, Father said he did not believe Minor had developmental delays.

Father had not followed up on the Department's recommendations for additional parenting education. He kept toys away from Minor during visits because he did not want Minor "to get 'confused and expect' " toys. Father did not read to Minor during visits, saying that he did not want to "confuse" Minor by reading to him because Father was not a teacher and that he would

4

wait until Minor was in kindergarten, when Father would be told what to read to Minor. In July 2023, the social worker referred Father to a program for parenting classes, and Father said he did not need more classes.

Some of Father's comments and behavior during visits suggested he did not understand Minor's developmental needs. During a virtual visit in September 2023, Minor became upset and Father told him, " 'don't do that,' " and told him he was being " 'babied' " and that nobody " 'want[s] to hear that.' " When Minor engaged in behavior related to his developmental delays, such as shaking his head for several seconds or rocking back and forth as a self-soothing mechanism, Father told Minor he was " 'trippin' " and that he should not do so. When Minor babbled, Father told him he could not understand him and he should " 'use [his] words.' " Father ended another visit early, leaving Minor sleeping unsupervised before the social worker arrived. During other visits in September, Minor played alone on the floor while Father sat on a chair or slept on a couch.

On November 9, 2023, the juvenile court terminated Father's reunification services and set the matter for a hearing pursuant to Welfare and Institutions Code section 366.26.

### Section 388 Petition and Section 366.26 Hearing

In its May 2024 report for the section 366.26 hearing, the Department reported that Father was unemployed and had no permanent residence. He was living temporarily with his mother (Grandmother). Father opposed having Minor placed with Grandmother because she was financially unstable and would not have the time. And, he said, Grandmother would " 'put pressure on me' to be a father and 'she would give [Minor] to me.' " Nevertheless, Father insisted he should have custody of Minor.

On one occasion in March 2024, Mother and Father showed up unannounced at the foster parents' home. When a social worker raised the subject with Father, he initially denied that the visit had taken place, but then clarified that he never entered the home.

For almost three months from September 24 to December 12, 2023, Father did not visit with Minor. Since then, he had consistently attended supervised monthly visitation, at which he played with Minor and interacted with him appropriately. However, on the January 2024 visit, when Minor was not yet 18 months old, Father commented as he changed Minor's diaper, " 'you're not potty trained yet, you should have been potty trained at this point.' " In February, when Minor followed Father's directions, Father said, " 'that's my boy, ain[']t nothing wrong with you.' " During the visit in March, the social worker discussed with Father the unauthorized visit he had made to the foster parents' home. When the social worker did not respond to a question Father asked about the incident, he told her that if she was going to " 'open [her] mouth,' " she needed to be transparent. In April, when Minor mumbled, Father said to him, " 'you still can't talk.' "

Minor continued receiving physical and occupational therapy.

A contested section 366.26 hearing was set for May 30, 2024. Two weeks before that date, on May 16, Father filed a request pursuant to section 388 to change the order terminating his reunification services and instead to offer additional services. The request was made on the grounds that Father had been having appropriate visits with Minor. The juvenile court continued the section 366.26 hearing, and Father filed an amended section 388 request on June 12, 2024, laying out a number of supportive facts: he had consistently attended monthly visits; he engaged Minor in appropriate play with toys, he ensured Minor's safety, and checked on him when he fell; he

6

prompted Minor to put away his toys after play and changed Minors' diaper; he protected Minor by telling him not to put blocks in his mouth; he used blocks to teach Minor about sharing; he praised Minor when he shared and picked up toys; he engaged Minor in conversation; he read to Minor and asked if he was hungry; and the two of them smiled and laughed together. Father had completed a parenting course in March 2024, after his services were terminated.

The juvenile court denied Father's section 388 request without a hearing on June 21, 2024. It concluded the petition did not show a change of circumstances, citing as it did so the comments Father made about Minor's development during recent visits. It further noted that Father's housing was unstable, that he had not shown he had a support network, and that his inappropriate comment to the social worker after the visit to the foster parents' home showed a lack of emotional maturity. The court concluded the petition showed neither that there had been a change in circumstances nor that the proposed resumption of reunification services would benefit Minor. In case No. A170828, Father appealed from this order.

The section 366.26 hearing took place on June 27, 2024. The juvenile court terminated parental rights and ordered a permanent plan of adoption. In case No. A170916, Father and Mother both appealed from this order. We have consolidated the two appeals.

## DISCUSSION

### I.      Summary Denial of Father's Section 388 Petition

In an argument joined by Mother, Father contends the juvenile court erred in denying his section 388 petition without holding an evidentiary hearing. He points to the evidence that he had resumed regular visits with Minor and Minor enjoyed the visits; that Father showed during visits that he

7

had learned parenting skills; that he had completed an additional parenting program; that he was continuing his search for stable housing; and that he had expressed a strong desire to reunify with Minor.

Section 388 authorizes a parent or other person with an interest in a child to bring a petition for a hearing to change, modify, or set aside any court order, setting forth any applicable change of circumstance or new evidence. (§ 388, subd. (a)(1).) "If it appears that the best interests of the child . . . may be promoted by the proposed change of order," the court "shall order that a hearing be held." (§ 388, subd. (d).) The court must construe a petition liberally, ordering a hearing if it presents any evidence that a hearing would promote the child's best interests. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461.) If there is no prima facie showing of facts that would sustain a favorable decision, the court may summarily deny the petition. (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) We review the juvenile court's ruling for abuse of discretion. (*Angel B.*, at p. 460.)

When it denied Father's section 388 petition without a hearing, the juvenile court explained its reasoning as follows; "The petition does not show a change in circumstances. Father made at least [three] comments related to the minor's development [during visits in 2024] that are concerning. . . . While Father completed parenting courses, he has not engaged in Nurturing Fathers and has not shown that he has a support network. His housing situation remains unstable." "In addition, there were comments made to the visitation supervisor . . . that indicate a lack of emotional maturity and disrespect (if she was going to 'open her mouth'). This all indicates to the court *only* that [Father] has changed his mind about visiting with his son, and a willingness to re-engage in services but not a change in circumstance. There has not been an adequate showing how the proposed change would

8

benefit *the minor*; what is presented is how the proposed change would benefit Father."

We see no abuse of discretion in this ruling. Despite the positive visits between Father and Minor, the court could reasonably conclude that Father's recent comments during visitation—to the effect that Minor should be potty trained, that he should be talking, and that there was "nothing wrong with you"—indicated he did not understand either Minor's development or the particular needs occasioned by his developmental delays. And Father's failure to follow up on the Department's suggestion of one-on-one parenting education and his continued lack of stable housing supported the finding that there had been no change in circumstances. But most importantly, the petition was brought only two weeks before the scheduled section 366.26 permanency planning hearing, a point at which Minor's "interest in stability was the court's foremost concern and outweighed any interest in reunification." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 594.) Minor had not lived a day of his life with Father, and he had seen him only a handful of times since September 2023. The court was within its discretion to conclude, not only that nothing in Father's original or amended petition showed a material change in circumstances, but also that any benefit Minor would receive from Father receiving additional reunification services was outweighed by the stability he would gain from a permanent plan.

## II.    Inadequate ICWA Inquiry

In an argument joined by Father, Mother contends the ICWA inquiry as to Father's relatives was inadequate. The Department concedes this point, and we agree.

On August 4, 2022, Father reported he was not a member or eligible to be a member of a federally recognized Indian tribe. Two weeks later,

9

however, he reported that he might have Native American ancestry but that he did not know what tribe. He said he had asked both his father and mother what tribe the family might be connected to, and they did not know. Father did not want to provide information about his parents. Mother reported no Indian ancestry.

The Department sent notice to the Sacramento Area Director of the Bureau of Indian Affairs (BIA) on December 21, 2022. The notice listed the names of a number of Mother's relatives but none of Father's. In February 2023, the juvenile court found that ICWA did not apply to the case.

In April 2024, the social worker spoke with both Father's mother and his sister regarding whether they would be appropriate caregivers. There is no indication the social worker asked them about Minor's possible Indian status.

Mother contends, and the Department concedes, that this inquiry was inadequate. A child welfare agency in a dependency case has a continuing duty to inquire whether the child is or may be an Indian child. (§ 224.2, subd. (a).) This duty continues throughout the dependency proceedings. (*In re J.C.* (2022) 77 Cal.App.5th 70, 77.) To fulfill its duty, if the agency has reason to believe the child may be an Indian child, its inquiry must include interviewing extended family members and contacting the BIA. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1132–1133; *In re T.G.* (2020) 58 Cal.App.5th 275, 290.) The agency must provide notice to any pertinent tribes if the inquiry establishes a reason to know an Indian child is involved. (*Dezi C.*, at p. 1133; § 224.3, subds. (a), (b).) It must describe its inquiries and the information it has received in its filings in the juvenile court. (Cal. Rules of Court, rule 5.481(a)(5).) When an agency's inquiry is inadequate, we conditionally

10

reverse with directions for the agency to comply with ICWA's inquiry and notice requirements. (*Dezi C.*, at p. 1136.)

It is undisputed that the Department's ICWA inquiry did not comport with these requirements. Despite Father's report that he might have Native American ancestry, and despite the fact that the Department was in contact with both his mother and his sister, the record contains no hint that anyone sought relevant information from them or inquired of the BIA about them. This inquiry is inadequate, and it requires a conditional reversal to allow the Department to fulfill its obligations under ICWA.

## DISPOSITION

The order denying Father's section 388 request is affirmed. The order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court for compliance with ICWA's inquiry and notice requirements and with the documentation requirements of rule 5.481 of the California Rules of Court. If the juvenile court finds there has been a proper and adequate inquiry and that ICWA does not apply, the court shall reinstate the order terminating parental rights. If the court concludes ICWA does apply, it shall proceed as required by ICWA and California's implementing provisions. (See *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1152.)


TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
PETROU, J.



*In re I.C.* (A170828/A170916)



11