Filed 12/11/20  P. v. Macias CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B300444 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA055282) |
| v. | |
| ERIC MACIAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Bruce F. Marrs, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Avri and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Eric Macias appeals the summary denial of a petition for resentencing under Penal Code[1] section 1170.95. Macias contends, and the Attorney General agrees, that because the record of conviction does not demonstrate that Macias is ineligible for relief as a matter of law, the superior court summarily denied the petition in error. We agree and remand the matter to the superior court for further proceedings, including the appointment of counsel for Macias and briefing by the parties in accordance with section 1170.95, subdivision (c).

**FACTS AND PROCEDURAL BACKGROUND[2]**

Ana Gomez and Jose Pichardo never married, but had a stormy relationship for 13 years and had three children together. In November 2001, Gomez left the residence she had shared with Jose and his mother, and rented a room in a house with two other women. However, Gomez continued to see Jose, and occasionally spent the night with him.

On December 15, 2001, Gomez attended her company's Christmas party with Carlos Mendez, a coworker. When the party ended around 11:00 p.m., Mendez went with Gomez to her home. While they were driving, Gomez received a call from Jose on her cell phone but did not answer.

Gomez and Mendez were alone in the house sitting in the kitchen when Gomez received another call from Jose. He asked

---

[1] Undesignated statutory references are to the Penal Code.

[2] We have taken judicial notice of this court's prior opinion in Macias's direct appeal from his conviction, from which the factual summary is drawn. (*People v. Macias* (Mar. 21, 2005, B171380) [nonpub. opn.]; see *People v. Cruz* (2017) 15 Cal.App.5th 1105, 1110 [appellate opinion is part of the record of conviction].)

2

her where she was, and Gomez told him she was at her mother's house.  Jose sounded upset and told Gomez he knew she was lying because he had driven by her mother's and her car was not there.  Gomez said they could discuss it later and hung up.  Jose called again and wanted to know where Gomez was.  Gomez responded that she was at home and had been sleeping.  Gomez then heard a car door close and asked Jose where he was.  Jose told her to open the front door.

Gomez had Mendez hide in the space between the refrigerator and the wall in the kitchen.  As Gomez went to the front door and looked out, she heard the back door being kicked in.  Jose, his brother Gerardo, and appellant entered the house.

Jose grabbed Gomez by the arms and demanded to know who else was in the house.  Gomez repeatedly told him she was alone.  He went to her roommates' bedrooms, kicked in the locked doors and checked inside.  Finding no one there, Jose dragged Gomez into her bedroom and searched it.  As they moved toward the living room, Gomez heard someone whose voice she did not recognize yell, "Here he is."

Jose ran to the kitchen and began punching Mendez, who was still between the wall and the refrigerator.  Gomez saw appellant standing beside Jose.  Gerardo had gone outside.  Jose pulled Mendez from the crevice into the main kitchen area.  While Mendez and Jose were fighting, Gomez saw appellant pick up something from near the sink, raise his hand, and bring it down toward Mendez.  Jose then backed off from his attack on Mendez.  Gomez did not see appellant actually stab Mendez, nor did she see Jose arm himself.  During the fighting, Gomez was tugging on Jose's shirt, trying to pull him away from Mendez.  Jose knocked her to the floor and hit her several times as she lay

3

there. Gerardo came in and said, "Let's go. That's enough." Gomez saw Mendez lying on the kitchen floor, and she heard him crying.

Jose picked Gomez up and took her out to a car in the driveway, which Gomez recognized as belonging to Gerardo's girlfriend. Trying to protect Mendez from further harm, Gomez stopped resisting and got into the car. Jose sat in the back seat on the driver's side next to Gomez. Gerardo was driving, and appellant sat in the front passenger seat. Jose continued to yell at Gomez and hit her as they drove. Appellant was dropped off, and eventually Jose released Gomez from the car.

One of Gomez's roommates returned home around 1:00 a.m. to find the front and back doors of the house open and blood everywhere. She attempted to open the bathroom door, but something was blocking it. She went to a neighbor's and called the police. Upon entering the house, Los Angeles County Sheriff's deputies observed a blood trail from the kitchen to the bathroom and found Mendez lying on the bathroom floor, dead from a stab wound to the heart. One of the knives found in the kitchen was consistent with the shape and size of the stab wound.

When Gomez arrived home she told one of the deputies she had seen appellant pick up an object from the sink and stab Mendez, demonstrating the motion he had made. Bloodstains matching Mendez's DNA were found in the front and rear passenger seats of the car into which Jose had forced Gomez after leaving the house. A fingerprint belonging to Gerardo was found on the handle of the driver's side door of the car, and Jose and appellant's fingerprints were found on two bottles recovered from the front yard of Gomez's home.

4

When appellant was arrested almost a year after the stabbing, he told detectives, "I knew this was gonna happen sooner or later, and I'm glad it's over.  I was gonna turn myself in but couldn't because I knew I would have to tell."

At trial, appellant presented evidence that he was seen wearing dressy clothes and shoes on the evening of December 15, 2001, before the stabbing.  In the early morning hours of December 16, 2001, around 2:00 a.m., appellant gave a friend a ride to another friend's house.  Appellant was still dressed up, wearing "church clothes."  The clothes were not stained, and appellant was relaxed and joking.

A jury convicted appellant of first degree murder (§ 187, subd. (a)), kidnapping (§ 207, subd. (a)), and first degree burglary (§ 459), and he was sentenced to a term of 33 years to life in state prison.  In an unpublished opinion filed March 21, 2005, this court affirmed the judgment.

In 2019, Macias filed a petition for resentencing pursuant to section 1170.95.  The superior court summarily denied the petition without appointing counsel, finding, "the petitioner is not entitled to relief as a matter of law, for the following reason:  [¶] . . . [¶]  The appellate opinion affirming the petitioner's conviction and sentence reflects that the petitioner was the actual killer and was convicted of murder on a theory of being the direct perpetrator (*People v. Eric Macias*, March 21, 2005, B171380, 2d Dist., Div. 2, p. 8)."

## DISCUSSION

**The Superior Court Improperly Denied the Section 1170.95 Petition Without Appointing Counsel to Represent Macias or Allowing Briefing by the Parties**

Section 1170.95, subdivision (c) requires the superior court to engage in a two-step review of a facially adequate petition for resentencing under section 1170.95.  In the first step, the superior court must review the petition to determine if the petitioner has made a prima facie showing that he falls within the provisions of the statute; that is, that he may be entitled to relief.  The parties agree that because Macias made the requisite showing to satisfy the first step, he was entitled to the appointment of counsel, and the matter should be remanded for further proceedings in accordance with section 1170.95.

### A. *Senate Bill No. 1437 and section 1170.95*

The Legislature enacted Senate Bill No. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Martinez* (2019) 31 Cal.App.5th 719, 723 (*Martinez*).)  To accomplish this objective, Senate Bill No. 1437 amended section 188, subdivision (a)(3), defining malice, to require that all principals to murder must act with express or implied malice to be convicted of that crime, with the exception of felony murder under section 189, subdivision (e).  (Stats. 2018, ch. 1015, § 2.)  The amendments to section 189 included the new requirement that a participant in a specified felony during which a death

6

occurs may be convicted of murder for that death "only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e)(1)–(3).)

Senate Bill No. 1437 and its amendment to section 188 "significantly restricted potential aider and abettor liability, as well as coconspirator liability, for murder under the natural and probable consequences doctrine, effectively overruling [*People v.*] *Chiu* [(2014) 59 Cal.4th 155] insofar as it upheld second degree murder convictions based on that theory.  Now, rather than an objective, reasonable foreseeability standard, as discussed in [*People v.*] *Prettyman* [(1996) 14 Cal.4th 248] and *Chiu*, pursuant to new section 188, subdivision (a)(3), to be guilty of murder other than as specified in section 189, subdivision (e), concerning felony murder, the subjective mens rea of 'malice aforethought' must be proved:  '[T]o be convicted of murder, a principal in a crime shall act with malice aforethought.'  (See also Sen. Bill 1437[,] Stats. 2018, ch. 1015, § 1, subd. (g) ['[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea'].)  And that required element of malice 'shall not be imputed to a person based solely on his or her participation in a crime.'  (§ 188, subd. (a)(3).)"  (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103, review granted Nov. 13, 2019, S258175; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598 (*Lewis*).)

7

In addition to these amendments, Senate Bill No. 1437 added section 1170.95 to provide a procedure by which those convicted of felony murder or murder under a natural and probable consequences theory may seek retroactive relief if they could no longer be convicted of murder because of the changes to sections 188 or 189. (*Martinez, supra*, 31 Cal.App.5th at pp. 722–723.)

If the petition meets the requirements of section 1170.95, subdivisions (a) and (b), the superior court must then undertake the two-step prima facie analysis set forth in subdivision (c) before an order to show cause may issue.[3] (*People v. Nunez* (2020) 59 Cal.App.5th 78 (*Nunez*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327–328, review granted Mar. 18, 2020, S260493 (*Verdugo*); *Lewis, supra*, 43 Cal.App.5th at pp. 1136, 1140, rev.gr.) In the first step of this analysis, the superior court conducts a sua sponte screening of the petition to verify the petitioner's eligibility for relief under the statute. At this stage, the court may "examine readily ascertainable information in the

---

[3] Section 1170.95, subdivision (c) provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

record of conviction and . . . if that threshold review 'establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill [No.] 1437's amendments to sections 188 and 189' " (*Nunez*, at p. 89), the court may dismiss the petition without the appointment of counsel or briefing from the parties. (*Lewis*, *supra*, 43 Cal.App.5th at p. 1140, rev.gr.; *Verdugo*, *supra*, 44 Cal.App.5th at p. 329, rev.gr.; *People v. Offley* (2020) 48 Cal.App.5th 588, 597; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674–675, review granted July 8, 2020, S262481; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 900, review granted Aug. 12, 2020, S263219.[4])

On the other hand, if the record of conviction does not indicate ineligibility as a matter of law, the court must proceed to step two of the prima facie analysis. There, section 1170.95, subdivision (c) requires the court to appoint counsel if requested and accept briefing from the parties on the issue of whether the petitioner is "entitled to relief." (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 332–333, rev.gr.) But as in the initial prima facie review,

---

[4] The California Supreme Court limited its review in *Lewis*, *Verdugo*, *Edwards*, and *Tarkington* to the following issues: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?" (*Lewis*, S260598 <https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2311967&doc_no=S260598&request_token=NiIwLSEmXkg%2BWzBVSCJdUElJQEA0UDxTJSJeUzNRMCAgCg%3D%3D> [as of Nov. 12, 2020], archived at <https://perma.cc/H7FP-QRMP>.)

the court does not engage in factfinding and draws "all factual inferences in favor of the petitioner." (*Verdugo*, at p. 329; *People v. Drayton* (2020) 47 Cal.App.5th 965, 982.)

If, after the parties' briefing, the petitioner has made a prima facie showing that he is entitled to relief because there remains no proof of ineligibility as a matter of law, "the court shall issue an order to show cause" why relief should not be granted. (§ 1170.95, subd. (c); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 ["A prima facie showing is one that is sufficient to support the position of the party in question"]; *In re Edward H.* (1996) 43 Cal.App.4th 584, 593 ["A 'prima facie' showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited"].)

At this point, the People may concede that relief should be granted, or in a hearing to determine whether the petitioner is entitled to relief, bear the burden of proving beyond a reasonable doubt that the petitioner is ineligible. (§ 1170.95, subd. (d).) At such a hearing, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

**B. *Macias made a prima facie showing that he falls within the provisions of the new law as required under subdivision (c) of section 1170.95***

Macias contends his petition for resentencing satisfied the requirements for the initial prima facie showing that he falls within the provisions of the statute and thus may be eligible for relief. Accordingly, the superior court erred in summarily denying his petition without appointing counsel and without briefing from the parties. We agree.

10

Macias's petition in this case satisfied the requirements for the initial prima facie showing under section 1170.95, subdivision (c). The petition alleges, and the record of conviction shows that the information charged Macias with murder, the prosecution proceeded under alternate theories, including the natural and probable consequences doctrine, and Macias suffered a conviction for first degree murder following a jury trial. Presuming these facts to be true, and assuming Macias could not now be convicted of first or second degree murder because of the changes to section 188,[5] he would be entitled to relief under section 1170.95.

In his direct appeal, Macias challenged the sufficiency of the evidence in support of his convictions as either a principal or an aider and abettor, and he contended his "murder conviction should be reversed because the doctrine of natural and probable consequences on which it rests violates due process." In rejecting Macias's claims, this court concluded that the evidence was sufficient to establish that Macias was guilty of murder as a direct perpetrator, *and* that the evidence was "sufficient to support [his] conviction as an aider and abettor, or as a member of a conspiracy to commit an assault, the natural and probable consequences of which was the murder of Mendez." This court also determined that the trial court had properly instructed the jury on the natural and probable consequences doctrine (CALJIC No. 3.02, 2000 Re-revision), observing that, "[a]lthough the natural and probable consequences doctrine may be subject to criticism, it is important to note that 'the Supreme Court has

_____

[5] There is no indication in the record that Macias was convicted under a theory of felony murder.

11

repeatedly rejected the contention that an instruction on the natural and probable consequences doctrine is erroneous because it permits an aider and abettor to be found guilty of murder without malice.' "

The trial court appears to have misconstrued our holding in the prior opinion in the direct appeal by concluding that we had determined Macias was the "actual killer" and "was convicted of murder on a theory of being the direct perpetrator." However, the prior opinion did not so hold. Rather, we specifically found the evidence sufficient to support the murder conviction on the theory that Macias was an aider and abettor or a member of a conspiracy to commit an assault, the natural and probable consequences of which was the murder of Mendez. If it can be established that Macias was convicted of murder on a natural and probable consequences theory, he would be eligible for relief under section 1170.95 because of the amendment to section 188. The fact that we also found the evidence sufficient to support conviction on the theory that Macias was the actual killer and thus a direct perpetrator is irrelevant to the question of Macias's eligibility for relief under section 1170.95 at this prima facie stage of review.

In sum, the allegations in the petition, together with this court's opinion in Macias's direct appeal, were sufficient to meet Macias's duty of making an initial prima facie showing that he falls within the provisions of the statute and may be entitled to relief. Because the superior court failed to follow the statutory procedures in denying the petition, its factual findings are not entitled to deference and remand is warranted for further proceedings in accordance with section 1170.95, subdivision (c).

On remand, the superior court is directed to appoint counsel as requested and accept briefing by the parties before proceeding to the determination of whether Macias made a prima facie showing that he is entitled to relief. (See *People v. Endsley* (2018) 28 Cal.App.5th 93, 104 [remand appropriate where trial court failed to follow statutory procedures]; *People v. Rocha* (2019) 32 Cal.App.5th 352, 360 ["A remand is necessary to ensure proceedings that are just under the circumstances, namely, a hearing at which both the People and defendant may be present and advocate for their positions"].) Thereafter, if the court finds that Macias has made the requisite showing, it must issue an order to show cause and proceed with a hearing in accordance with section 1170.95, subdivisions (c) and (d).

## DISPOSITION

The postjudgment order is reversed.  The matter is remanded to the superior court for further proceedings in accordance with section 1170.95, subdivision (c), including the appointment of counsel for Macias and briefing by the parties.

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.