Filed 10/23/25  In re M.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>    Defendant and Appellant. | E086137<br><br>(Super.Ct.No. J293302)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Dawn M. Martin, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant J.S. (Mother) appeals the denial of an evidentiary hearing on her petition filed pursuant to Welfare and Institutions Code section 388[1] seeking additional reunification services for M.M. (a boy, born May 2021; hereafter Minor).

**FACTS**

A.    SECTION 300 PETITION

On May 23, 2022, Minor's father, T.M. (Father)[2] took Minor to the Arrowhead Regional Medical Center stating that Minor was suffering from fevers, congestion, coughing and constipation. There was concern by the treating doctor that Minor was "extremely" underweight and had not been receiving regular medical care. Mother was contacted and denied that Minor had been sick. She also insisted it was Father's responsibility to take Minor to the doctor. Minor had previously been admitted to the hospital for failing to thrive in November 2021. Mother and Father (collectively, Parents) were informed at that time to take Minor to a nutritionist upon discharge but Minor was never taken to the nutritionist. Parents reported that they had engaged in domestic violence. They did not live together and exchanged custody of Minor at a police station. Mother denied ever knowing that Minor had been hospitalized previously for failing to thrive. Minor had to be admitted into the hospital on May 23, 2022, after spiking a fever of 104, and the hospital needed to monitor Minor's weight. Mother had a prior criminal history of domestic violence and battery.

---

[1]  All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]  Father is not a party to the appeal.

2

Minor was detained from Parents by San Bernardino County Children and Family Services (Department) on May 24, 2022, through a detention warrant. A section 300 petition was filed against Parents for Minor. It was alleged against Mother pursuant to section 300, subdivision (b), failure to protect, that (b-1) she did not provide medical care to Minor resulting in Minor failing to thrive; (b-2) she engaged in domestic violence; and (b-3) she suffered from substance abuse. A detention hearing was held on May 27, 2022. The trial court found that a prima facie case had been established to detain Minor from Parents and Minor was placed in a foster home.

The jurisdiction/disposition report was filed on June 14, 2022. The section 300 petition was amended (amended petition). An additional allegation, b-8, was added for Mother that she suffered from a history of mental illness, which negatively affected her ability to adequately and appropriately care for Minor. It was recommended by the Department that Minor remain out of the home and that Parents receive reunification services. Minor had been placed in the foster home of Ms. S., a paternal cousin (Cousin). The Department provided medical records documenting Minor's continued failure to thrive due to his low weight and the failure on the part of Parents to provide medical care to Minor.

Father reported that during the first three months of Minor's life, Mother refused to share medical information with Father. Mother also refused to let him take Minor to doctor's appointments. Mother was incarcerated from October 2021 until December 2021 and Father cared for Minor following specific feeding guidelines. Father admitted that between January 2022 and March 2022, Minor missed doctor's appointments due to

3

other events going on with the family or based on Mother refusing to take him. Father insisted that Minor ate very well when he was in his custody.

Mother was interviewed and stated that Minor was not too small as their entire family was "tiny." She insisted that Minor " ' eats all day.' " She believed he was just small due to genetics. She never refused to take Minor to his doctor's appointments. She insisted that Father was not properly feeding Minor or providing him medical care.

Parents had restraining orders in place against each other due to past domestic violence. Father reported that Mother was a destructive person and also had threatened to harm herself. Once Minor was born, they fought more and had physical altercations. In August 2021 Mother, who had a key to Father's apartment, went inside and poured baby formula on Father's belongings. Mother was incarcerated in October 2021 after violating her restraining order by destroying Father's apartment and pulling Father's head back by his hair. On another occasion in May 2022 Mother violated the restraining order by showing up at Father's apartment and knocking loudly on the front door. Father did not let her in, and she would not leave. Father insisted that Mother initiated all of the physical altercations between them.

Mother insisted that Father instigated the domestic violence. Since Minor was born, they only had verbal arguments and not in front of Minor. Mother had previously completed domestic violence and parenting classes for her domestic violence arrest and a prior case with the Department. Mother was on summary probation expiring on October 18, 2022, for a charge of battery. Mother denied she had any substance abuse issues. She occasionally smoked marijuana and drank alcohol. Mother tested positive for

marijuana on June 7, 2022. Mother denied any mental health diagnosis. Mother had prior interactions with the Department in 2021 and 2022.

Minor had gained weight since he had been living with Cousin. Minor was beginning to walk and say words. Mother had a visit with Minor on June 7, 2022; she was protective and engaged with Minor. The Department recommended that the juvenile court find the allegations in the amended petition to be true. The Department was concerned about Parents failing to get proper medical care for Minor and the ongoing domestic violence. The Department recommended that Minor remain in his placement and Parents receive reunification services.

An addendum report was submitted to the juvenile court on July 1, 2022. Parents had been referred to services. Mother had an additional positive drug test for marijuana on June 21, 2022. Mother had been referred to an outpatient substance abuse treatment. Mother had consistently visited with Minor. Minor continued to gain weight.

The jurisdiction/disposition hearing on the amended section 300 petition was held on July 7, 2022. The juvenile court found true, after Mother waived her rights, the b-1, b-2 and b-3 allegations in the amended section 300 petition to be true against Mother. The b-8 allegation was dismissed. The allegations against Father, who was named the presumed father, were also found true. They were both granted reunification services. Minor remained placed with Cousin.

A six-month status review report on the amended section 300 petition was filed on January 5, 2023. It was recommended that reunification services be continued for Parents. Minor would remain in the care of Cousin. When requested, Mother came to

the Department on August 10, 2022, and December 19, 2022; she refused to sign her case plan and was aggressive with the social worker. She insisted she could not complete her case plan because she worked out of town. She now denied any domestic violence between her and Father and insisted she should not have to complete domestic violence courses. She claimed to have enrolled herself in parenting education and substance abuse programs. Mother had completed her individual counseling, but had only attended a few parenting classes. Mother had recently enrolled in an outpatient substance abuse program. Minor was no longer considered to be failing to thrive and was doing well in the home of Cousin. Mother was consistent in visitation with Minor and was engaged in the visits. She appeared to be "well bonded" to Minor.

Father was working with the Department to complete his case plan. He was engaged in counseling and had finished the domestic violence and parenting classes. He had some positive drug tests for cocaine while in outpatient substance abuse programs.

The six-month review hearing was held on January 9, 2023. Minor was continued in the custody of Cousin and six additional months of reunification services were given to Parents.

A 12-month status review report for the amended section 300 petition was filed on June 15, 2023. The Department recommended that reunification services for Parents be terminated. It recommended that a section 366.26 hearing be set with a permanent plan of adoption by Cousin, with whom Minor had been placed since May 27, 2022.

6

Communication with Mother during the reporting period had been minimal. On January 12, 2023, Mother reported not having permanent housing. During a meeting with a social worker on January 25 Mother became argumentative when she was advised that maternal grandmother's home would have to be assessed before visits could occur at the house. During the reporting period, Mother had completed parenting classes, domestic violence classes and individual counseling. Mother had tested positive for marijuana or been a no-show for tests on five occasions. Mother had been terminated from her outpatient substance abuse program with a recommendation for higher level care. Mother continued to have anger issues and blame the Department for problems. Father had completed most of his services, including a 45-day residential treatment program.

Mother had regularly attended visitation with Minor and was appropriate during visits. Mother had several negative interactions with the staff at the location where the visits with Minor took place. She also had been engaged in several arguments with the social worker regarding visitation, and her blaming the Department for taking Minor away from her. The Department was concerned about her "unruly behavior" and not taking responsibility for her actions. The matter was set contested.

In preparation for the contested 12-month review hearing on the amended section 300 petition, the Department submitted additional information to the court on July 17, 2023. The Department was willing to extend family reunification services to Mother. Mother reported she had completed an outpatient substance abuse program. Mother was willing to take anger management classes. The 12-month review hearing was held on

7

July 24, 2023, and the juvenile court continued reunification services for Mother; Father's services were terminated.

An 18-month status review report on the amended section 300 petition was filed on November 9, 2023. The Department recommended that Minor be returned to Mother's home under a 29-day trial period and that she be provided family maintenance if the trial period was successful. Mother had a two-bedroom apartment, was employed and had family who could watch Minor while she was working. Mother had completed counseling, anger management classes, was scheduled to complete her substance abuse treatment program by November 13, 2023, and had several negative drug tests. Mother had successful overnight and unsupervised visits with Minor during the reporting period. Mother acknowledged that her past behaviors were a risk to Minor; she was focusing on caring for Minor.

At the 18-month review hearing, the juvenile court ordered return of Minor to Mother's custody on a family maintenance plan. On May 14, 2024, the Department filed its status review report recommending that the dependency be dismissed. Mother had since given birth to Minor's half-brother (Sibling). She also had a new boyfriend, I.V. (Boyfriend), who was the father of Sibling. She had adequate provisions in the home for both children although the home appeared to be unorganized. There was information given to the Department that Minor had been on an unsupervised visit with Father, whose visits had been terminated. Mother denied she had allowed Minor to visit with Father. Mother had allowed a visit between Minor and his godmother and Mother stated the godmother may have allowed Father to visit with Minor. Mother denied that Boyfriend

8

lived in her home. She was advised to not let Boyfriend be around Minor as he had been found to have an extensive criminal history. Boyfriend had been investigated for grand theft and assault with a deadly weapon. During the investigation, ammunition was found, including in Minor's room in Mother's home, which belonged to Boyfriend. He was arrested. An unannounced visit was made to Mother's home on March 21, 2024, and the apartment had been vacated. Mother had not advised the Department she had moved. Mother contacted the Department and advised that she was on vacation in Palm Springs with Minor. Mother moved in with the paternal grandmother of Sibling in San Bernardino but insisted she had no contact with Boyfriend. The home was assessed by the Department and found to be appropriate. Mother had several negative drug tests during the reporting period.

While the Department noted there were some difficulties during the reporting period, Mother had completed her case plan and maintained her sobriety. Mother had provided the necessary provisions of housing for Minor. It recommended dismissing the dependency. At a hearing held on May 22, 2024, the juvenile court did not agree with dismissal. It continued the matter for the Department to provide additional information regarding Boyfriend and his arrest. The juvenile court also wanted more information regarding the visit between Minor and Father.

Several status review reports were provided by the Department. Visits to Mother's home were conducted on several occasions during the reporting period. There were no signs that Boyfriend lived in the home. There were adequate provisions and Minor appeared well-groomed and free of bruises. Mother had no contact with Boyfriend

but admitted she had cosigned on his bail after his arrest. She regretted paying his bail. Mother agreed to call the police if Boyfriend came to the home. The Department continued to recommend dismissal of Minor's dependency. The Department provided the police report for Boyfriend's arrest, which occurred in Mother's home. Ammunition was found in the home, specifically in the "child's bedroom." The matter was set contested as Minor's counsel did not agree with the dismissal.

Prior to the contested hearing, the Department provided another status review report. On July 16, 2024, a social worker went to the home where Mother was staying. A person in the home reported that Mother had left the home with Boyfriend, Minor and Sibling. Boyfriend had a charge and active warrant from April 18, 2024, for battery of an elder or dependent adult with serious bodily injury. Boyfriend had several other pending criminal cases. The Department was now recommending continuation of family maintenance services for Mother and that she participate in individual therapy and a parenting class to address how her choice of partners could impact the safety of her children. She continued to test negative for all substances.

At the hearing on July 25, 2024, the juvenile court noted the change in recommendation. The matter was continued.

B.      SECTION 387 PETITION

On July 29, 2024, a supplemental section 387 petition was filed against Parents for Minor. Minor was detained from Mother on July 25, 2024. It was alleged under section 387 that Mother had failed to protect Minor by allowing him to be in the presence of Boyfriend, who had an extensive criminal record. Mother also allowed unsupervised

10

visits between Minor and Father. The Department recommended that Minor be removed from Mother. Despite Mother having completed numerous services, she failed to show she could be protective of Minor.

The matter was heard on July 30, 2024. Mother's counsel argued there had been no recent visits between Minor and Father, and there was no evidence Boyfriend had been with Minor. Further, even if there was contact between Boyfriend and Minor, the Department failed to show any harm or risk to Minor.

Minor's counsel argued that there had been a pattern of behavior by Mother in the previous six months, which showed a risk to Minor. The Department agreed with Minor's counsel, noting that Minor had been a dependent of the court since May 2022. Mother's behavior over the prior six months showed she posed a substantial risk to Minor. Mother hid her pregnancy and new relationship from the Department. The juvenile court reviewed all of the status review reports. It found that Minor was to remain detained from Mother and placed in a foster home. Maternal aunt and Cousin, the former caretaker, were to be assessed for placement.

The jurisdiction/disposition report for the section 387 petition was filed on August 16, 2024. It was recommended that no family reunification services be offered to Parents due to exceeding the statutory legal timeframes for family reunification. Minor and Sibling had been placed together in a foster home. Mother had failed to benefit from reunification services or family maintenance. She was not protective of Minor. Father had reported that Mother allowed him to visit with Minor. Mother continued to deny that

she knew anything about Boyfriend's criminal record or that ammunition was found in their home.

The Department further reported that after a visitation with Mother, Minor became very upset, cried and refused to stop holding Mother. Mother tried to put Minor in the caregiver's car, but he refused. Mother got upset and yelled at the social worker accusing her of taking away her children for no reason. She yelled at the social worker that she must " 'not have kids, so you take kids away,' " and " 'you must get off on taking children away.' " Mother then backed the social worker into the caregiver's car and would not let her get away. She threatened the social worker that she was going to "fuck [her] up" and "Don't let me see you on the streets." The social worker was fearful and asked other witnesses to call the police. The caregiver was able to get Minor into his car seat. Mother had to be directed to step away from the car so the caregiver could leave. Mother left the premises prior to law enforcement arriving at the scene.

An addendum report was filed on August 30, 2024. Mother had three visits with Minor. Minor was happy to see Mother, hugging her, telling her he loved her and that he missed her. Minor struggled at the end of visits, expressing he wanted to go home with Mother.

The jurisdiction/disposition contested hearing on the section 387 petition was held on September 12, 2024. Mother's counsel argued that although Mother had not been perfect, she had not violated any court orders. She had tried to fix the mistakes she made. She was never in a relationship with Boyfriend. The unsupervised visit between Father and Minor occurred six months prior and had not happened again. Minor's counsel

12

argued that Mother had a relationship with Boyfriend and he had been in her home on occasion. Boyfriend reported to the police that he lived with Mother. Mother also moved without notifying the Department. Minor's counsel was also concerned about her interaction with a social worker at visitation. There was further information that Mother called the foster parents and requested a weekend visit with Minor alone and told the caregiver not to tell the Department. She also asked the foster mother to request legal guardianship so that she could get her children back after the case was closed. Minor's counsel argued there was evidence that Mother and Boyfriend were in fact together. The Department contended that Mother failed to recognize her conduct impacted her children. Mother's counsel stated that Mother was regretful for the things she said to the social worker.

The juvenile court reviewed all of the status review reports. After reviewing the reports, the juvenile court found the allegation in the section 387 petition against Mother true. Further, no services would be offered as it was past the two-year statutory period for services. The matter was set for further review.

Mother filed her first section 388 petition on January 22, 2025, as will be discussed in more detail, *post.* It was denied without a hearing.

A status review report was filed on March 6, 2025. The Department recommended foster care for Minor with a permanent plan of adoption. Minor was placed with Cousin, who had cared for Minor most of his life. At the review hearing, the Department changed its recommendation to setting a section 366.26 hearing. The juvenile court set the matter for a section 366.26 hearing.

13

At a hearing on April 2, 2025, the Department was now recommending that Minor be placed with Father, who had moved to Missouri, and who had shown a change of circumstances. The section 366.26 hearing was taken off calendar with a permanent plan to return Minor to the custody of Father. Father was granted additional reunification services.

Mother filed a second section 388 petition seeking additional reunification services, as set forth in more detail, *post*. It was denied without a hearing by the juvenile court. On April 30, 2025, Mother filed her appeal from the denial of an evidentiary hearing on her second section 388 petition.

## DISCUSSION

Mother seeks to have this court reverse the juvenile court's order denying her second section 388 petition without first having an evidentiary hearing. She seeks remand in order to be afforded the opportunity to provide evidence to support the section 388 petition.

### A.    ADDITIONAL FACTS

Mother filed a first section 388 petition on January 22, 2025. Since Mother had been denied reunification services on September 12, 2024, Mother had completed parenting and anger management classes. She had attended counseling in which it was discussed her choice of partner could impact her children. She had no contact with Boyfriend or Father. Minor was bonded to Mother. Mother was requesting return of Minor to her care with family maintenance or further services. A hearing was scheduled on whether to grant an evidentiary hearing.

14

At the hearing conducted on February 6, 2025, Mother's counsel sought to have Mother testify and to have her therapist testify about her progress. In the therapist's report, she noted that Mother understood why the Department removed Minor; she took full responsibility for the removal of her children. This was new evidence showing a change in circumstances. Further, Minor was bonded to Mother, and she had never missed a visit. Mother's counsel acknowledged that family maintenance would not be possible because Mother was currently homeless. However, she should be granted reunification services.

Minor's counsel argued against granting the section 388 petition. Minor's counsel represented that Mother had been involved in an altercation with a man at a hotel in January. Also, on January 8, 2025, Mother had got into an argument with a social worker regarding makeup visits. Mother told the social worker " 'You like taking people's children away. That's sick. I am a good mother, and you know it. This all because I don't do background checks on who I lay with." Despite completing services, her behaviors were the same. The Department joined in the arguments made by Minor's counsel. Since the therapist wrote her report, Mother had been involved in altercations with social workers at the Department in the presence of Minor. Further, it was not in Minor's best interest. The Department argued that children model the behaviors of adults in their lives. Mother had exhibited negative behaviors in Minor's presence. It was not in Minor's best interest to return him to Mother's care when she continued to exhibit negative behaviors.

The juvenile court stated it had read and considered all of the reports submitted by the Department. The juvenile court also considered the evidence presented by Mother with the section 388 petition. The juvenile court reviewed the therapist's notes. The juvenile court acknowledged that Mother completed the classes and therapy, but based on the interim report from the Department, she had been involved in another domestic violence incident with a man, had gotten into a confrontation with a social worker in front of Minor and continued to try to gain access to Minor through direct contact with the caregiver. The juvenile court was especially concerned about Mother's behavior with the social worker. Mother had failed to benefit from services. She was not controlling her anger. The juvenile court found it was not in Minor's best interest to grant the section 388 petition and did not find a change in circumstances.

Mother filed a second section 388 petition on April 8, 2025, upon which this appeal is based. Mother sought reunification services. Mother completed a second domestic violence class on March 20, 2025, on her own and had benefitted from her classes. She had no recent domestic violence incidents. She provided a declaration in which she expressed what she had learned in the domestic violence classes, including being able to identify different types of domestic violence and prevent their occurrence. She also learned how it can negatively impact her children. Mother stated that she was young (she was 17 years old when she had Minor) and had made mistakes in the past. As Minor's mother, she took a responsibility to protect him from any potential dangers. She and Minor had a very strong bond and it was detrimental to him to not be with her. She was willing to find housing so that Minor could be with her. She had been sober for two

years.  The matter was set for a hearing to determine if an evidentiary hearing was required.

The Department filed a response, recommending that the juvenile court deny the section 388 petition.  Mother had a visit with Minor on April 16, 2025, which went well.  After the visit, a social worker spoke with Mother.  Mother told the social worker that she had "never" done anything wrong, and she was an excellent mother.  She admitted she may have picked the wrong men with whom to have children.  Mother also said that the Department took her children "for no reason" and that she was going to appeal until her children were returned to her care.  Mother was upset that Father was being given additional reunification services since he had not been there for Minor for two years.  She did not want to cooperate with Father in raising Minor.

At the hearing held on April 30, 2025, the juvenile court noted it had reviewed Mother's section 388 petition, the response by the Department, and a new status review report filed on that day.  The status review report noted that Father had received "hate texts" from Mother.  Father reported that he tried to block her messages, but she would change her number.  The Department believed that, based on the tone and context of the messages, that Mother did not benefit from the court-ordered anger management classes she completed.  The text messages were attached to the report.  The text messages stated, "How dare u leave me to deal with this shit on my own for the last 2+ years and then all of a sudden try to take my baby from me!!  This is just fucked up and u know it!!  [¶] Just know I wont stop until hes with me [Father]!  Where he wants to be!!  [¶]  U are all

17

failing [Minor]!! Hes 3 and shouldnt need to be going thru all this! He wants to be with me!! Let him speak for him self [*sic*] on who he wants to be with!!"

Mother's counsel insisted that Mother wanted to coparent with Father. Father was granted additional services, and Mother also wanted this opportunity. She had been the only parent fighting for return of Minor for a long time. In her declaration, Mother had taken responsibility for choosing men who were harmful to her children. An evidentiary hearing was required in order for Mother to confirm what was in her declaration. Minor's counsel objected to the section 388 petition. Mother recently told a social worker that she never did anything wrong to warrant removal of her children. The Department noted that Mother had received 18 months of services and had not shown any benefit.

The juvenile court stated it was concerned about Mother's conversation with the social worker after the visit. Mother was still minimizing the allegations that led to Minor's removal. Mother felt she had done nothing wrong. The juvenile court also was concerned about the text messages that Mother sent to Father. The juvenile court noted that "this isn't an issue of the mother picking the wrong men. This is the fact that services were provided. There was family maintenance, then the child was detained once again." Mother confirmed in her text messages with Father that she was not willing to coparent with him. The juvenile court ruled, "Again, this is not a case of just picking the wrong men and actions speak louder than words. The Court will deny the request for an evidentiary hearing. The Court is finding the mother has not demonstrated a prima facie

case as to changed circumstances and that it would not be in the best interest of the minor for [the] Court to grant the request."

B.     ANALYSIS

"Under section 388, a [person] may petition to modify a prior order 'upon grounds of change of circumstance or new evidence.' [Citations.]  The juvenile court shall order a hearing where 'it appears that the best interests of the child . . . may be promoted' by the new order." (*In re K.L.* (2016) 248 Cal.App.4th 52, 61.)  " 'There are two parts to the prima facie showing:  The [petitioner] must demonstrate (1) [either] a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the [child].' " (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.)

" 'A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' [Citation.]  'Whether [the petitioner] made a prima facie showing entitling [the petitioner] to a hearing depends on the facts alleged in [the] petition, as well as the facts established as without dispute by the [dependency] court's own file.' " (*In re B.C.* (2011) 192 Cal.App.4th 129, 141.)  "In determining whether the petition makes the required showing, the court may consider the entire factual and procedural history of the case." (*In re K.L.*, *supra*, 248 Cal.App.4th at p. 62.)

"A 'prima facie' showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.  [Citation.]  If a petitioner could get by with general, conclusory allegations, there would be no need for an initial determination by the juvenile court about whether an

19

evidentiary hearing was warranted. In such circumstances, the decision to grant a hearing on a section 388 petition would be nothing more than a pointless formality." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.) "In evaluating whether the petitioner has met his or her burden to show changed circumstances, the trial court should consider: (1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.)

"The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion." (*In re A.A.*, *supra*, 203 Cal.App.4th at p. 612; *In re S.J.* (2008) 167 Cal.App.4th 953, 959.)[3]

Here, the juvenile court properly determined that Mother had failed to make a prima facie showing of changed circumstances to warrant an evidentiary hearing. Mother provided evidence that she had completed a second domestic violence course after the trial court found the allegations in the section 387 petition true that she could not protect Minor, and denied reunification services. She insisted she now understood that she had to protect Minor. Despite her completing the court-ordered services, the juvenile court

---

[3] Mother argues section 366.3, subdivision (f), authorizes further reunification services past the 18-month period. The People do not respond and section 366.3, subdivision (f), appears to support her claim based on her parental rights not being terminated.

remained concerned that Mother had not resolved her anger issues despite numerous services. In addition, Mother still refused to accept responsibility for the removal of Minor from her care. The initial detention of Minor was based on his failure to thrive and he was severely underweight. Mother refused to take responsibility for Minor's failure to thrive. Mother continued to deny that the removal of Minor was due to her actions. Mother had not shown that she could take responsibility for Minor's well-being.

Further, Mother berated a social worker in the presence of Minor. She also continued to harass Father, with whom she was first involved in the dependency proceedings for being engaged in domestic violence. Father received harassing text messages telling him he was "fucking" everything up and that she would get back custody of Minor from him. Mother, despite stating in her declaration that she had learned that her behaviors could impact Minor, showed by her actions that she continued to engage in verbal altercations with Father, and continued to have anger issues.

Mother, herself, in her declaration recognized that domestic violence can transfer from "child hood into adult hood when the child has been around it while growing up." She also noted that "The parents situations and attitudes affect how they parent their children, which ultimately effects how the child develops physically, mentally, and emotionally." Mother however did not acknowledge that it was her actions that caused Minor to be declared a dependent of the court based on his failure to thrive and domestic violence, telling the social worker she had done nothing wrong. She also failed to consider that her actions in yelling at the social worker in Minor's presence would impact the well-being of Minor.

Mother contends that she should have been given an opportunity to cross-examine the social worker about the interactions with Mother and the text messages to Father. However, Mother's counsel stated below that a hearing was necessary in order for Mother to confirm the statements in her declaration. The juvenile court credited Mother's statements but noted that her actions spoke louder than words. Mother's counsel never stated that such hearing was necessary to cross-examine the social worker. Mother's counsel argued that the report was erroneous in stating that Mother did not want to coparent with Father. Mother's counsel never stated that the text messages were not correct, or that the interaction with the social worker did not occur, which were the parts of the report that the juvenile court mentioned in making its ruling. Moreover, Mother's counsel had confirmed previous negative interactions with social workers at the section 387 hearing stating that she regretted her actions. Mother does not provide what additional evidence would have been obtained, had the social worker testified, that would have entitled her to additional reunification services. The juvenile court considered Mother's declaration, the other documentary evidence and heard argument from both parties prior to denying the section 388 petition. Mother has not provided what additional evidence would have been produced if the social worker was subjected to cross-examination or if she had testified. (See *In re C.J.W.*, *supra*, 157 Cal.App.4th at pp. 1080-1081 [proceedings comported with due process where hearing conducted, received written evidence, and heard argument, but did not hear testimony from parents or social workers].)

22

Moreover, Mother failed to show that it was in Minor's best interest to grant additional reunification services. There is a clear bond between Minor and Mother. However, Mother continued to place Minor at substantial risk despite completing court-ordered services. Mother allowed Boyfriend to bring ammunition into her home, which posed a significant risk. She argued with social workers in Minor's presence, which could impact his behaviors. Mother failed to notify the Department that she had entered into a relationship with Boyfriend, and had given birth Sibling. These events occurred after Mother had been already given 18 months of reunification services and she had completed numerous services. Mother's previous section 388 petition was denied on the basis that Mother continued to defy the Department and act in an aggressive manner with social workers. Mother never appealed from the first section 388 petition. Minor was set to be placed with Father or remain with Cousin who had cared for him a majority of his life. Mother did not make a prima facie showing that additional reunifications services would be in Minor's best interests.

The juvenile court properly denied Mother's section 388 hearing; it reasonably concluded that Mother had failed to make a prima facie showing of changed circumstances and that it was not in Minor's best interests to grant further reunification services.

## DISPOSITION

The order denying Mother's second section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

RAMIREZ

P. J.

CODRINGTON

J.